GEORGE C. SHACKELFORD AND WIFE, Plaintiffs in Error, *v.*
HENRY H. HALL *et al.*, Defendants in Error.

### ERROR TO CASS.

A devise, with a condition that the devisee shall not marry until he or she arrives
at the age of twenty-one, is lawful; and a violation of it, after notice, will be
held to have forfeited the estate devised.   Such a devise, is one with a condition
subsequent.
But the violation of such a condition, will not work a forfeiture of the estate
against the devisee, if the devisee was also heir at law ; unless it plainly appears
that the devisee had been expressly notified of the condition upon which the
devise depended.

THIS was a proceeding commenced in the Cass Circuit, by
Henry H. Hall, for partition of the estate of his deceased father,
making the widow and his brothers and sisters parties ; asking
that Eliza Newman, the sister who intermarried before she
became twenty-one, be excluded from any part of the estate.
The petition, etc., was referred to the master in chancery,
to take proofs, make report, etc.   Upon the report of the
master, the court, WALKER, Justice, presiding, ordered that par-
tition be made of the premises set forth and described in the
petition, according to the respective rights of the parties, which
were adjudged by the court, etc., and apportioning the same,
among the children, subject to the life estate of the widow, allot-
ing out of said estate seven twenty-fourth parts thereof to said
Eliza Newman.   Commissioners were appointed to make parti-
tion, and their report was approved and confirmed.

Henry H. Hall, Senior, died in July 17, having bequeathed
to his daughter, Mrs. Bassett, (now Mrs. Shackelford,) $1,500 ;
and devised and bequeathed his real and personal estate to his
wife for life, or during her widowhood—" and at her death I
will and bequeath to Henry H. Hall, Eliza Hall, John P. Hall
and Robert Hall, my entire estate, both real and personal, to be
equally divided share and share about.   It is my desire and
will, that none of my children now under the age of twenty-one
years shall marry until they shall each one of them attain the
age of twenty-one years.   To this end, I stipulate and will,
that in case any one of them now under the age of twenty-one

years shall intermarry, then, and in that event, he, she or they shall only be entitled to receive the sum of one dollar out of my estate, as his, her or their portion thereof." The widow and Henry H. Hall, Jr., were appointed to execute the will.

On 29th October, 1850, said John P. Hall died intestate, leaving as his heirs at law, Ann P. Hall, his mother, Henry H. Hall, Jr., Eliza Hall, (married with Nelson B. Newman,) Robert Hall and Mrs. Shackelford, his brothers and sisters.

Errors assigned:

1st. That Mrs. Newman was allowed seven twenty-fourth parts of the estate.

2nd. That Mrs. Shackelford was not allowed as much of the estate as she was entitled to.

D. A. and T. W. Smith, for Plaintiffs in Error.

J. Grimshaw, H. E. Dummer, and Stuart & Edwards, for Defendants in Error.

Caton, C. J. We will first dispose of the question of the construction of that clause of the will which imposes the condition, for the purpose of seeing what was the true intent of the testator. It is contended by the defendant that it imposes an absolute and perpetual prohibition against the marriage of all of the infant devisees. If this be so, as a condition subsequent, it would destroy itself, as against public policy; and the estate was vested discharged of the condition. This is the language of the will: "It is my desire and will that none of my children under the age of twenty-one years, shall marry until they shall each one of them attain the age of twenty-one years. To this end I stipulate and will that in case any one of them now under the age of twenty-one years shall intermarry, then and in that event, he, she or they shall only be entitled to receive the sum of one dollar out of my estate, as his, her or their portion thereof." When this whole quotation is taken together, there can be no mistaking the real intention of the testator. The last expressions, taken by themselves, would no doubt convey the intention that the devise should be defeated if those under twenty-one years of age should ever marry, but that is explained by what precedes it. First he expresses the desire that none of his children should marry before they are twenty-one years of age, and, "to this end" he stipulates and his will is, in case any should marry, that the estate should be forfeited. His meaning beyond all doubt was, that if any should marry before they should arrive at that age, the forfeiture should accrue.

It is now incumbent to inquire what was the character of this devise contained in the second clause of the will.

After making a bequest to Mrs. Bassett, the testator proceeds, " And I will and bequeath all my real estate, money and personal property, and choses in action, to my wife, Ann H. P. Hall, during her widowhood, and in case she does not marry, during her natural life, and at her death, I will and bequeath to Henry Hall, Eliza Hall, John P. Hall and Robert Hall, my entire estate, both real and personal, to be equally divided share and share about." Then follows that portion of the will first quoted. By this, the estate vested, absolutely and immediately upon the death of the testator, in the devisees as specified; in the widow a life estate, if not sooner terminated by her marriage, and the remainder in the four other devisees. In either case, it depended upon no contingency or condition for its taking effect; and was subject to no limitation. It was, however, as to those of the devisees who were, at the time of his death, under twenty-one years of age, subject to be defeated by their marriage before they should attain that age. By that event the estate thus vested was subject to be divested out of the offending party. This, then, was a devise with a condition subsequent.

To this it is first objected, on the part of the defendants, that it was a condition in restraint of marriage, and therefore void; as against the policy of the law and the interest of the commonwealth. Whatever struggles there may at one time have existed between the ecclesiastical and common law courts of England, upon the application of the principles of the civil law to the construction of wills, that struggle has now ceased, at least so far as this branch of the subject is concerned, although it has, perhaps unfortunately, left the same clause and the same language of a will subject to different constructions, and as having different effects, as applied to the disposition of real and personal estate, and such might be the case here, if the personal property were also involved in this controversy, but for the want of notice, which will be hereafter considered, this incongruity, or, we might say, contradiction, has arisen from the fact that the ecclesiastical courts had exclusive jurisdiction of the subject of bequests and personal property, and the common law courts exclusive jurisdiction of the subject of devises and of real estate, as, for instance in this very case. Here is a condition subsequent, partially in restraint of marriage, but there is no devise over of the estate, in case of forfeiture by marriage, before arriving at the age of twenty-one. This is now well settled to be a provision merely *in terrorem* as to the bequest of personalty, for the want of a disposition of it

in case of forfeiture; while as to the devise of the realty, to which this condition subsequent is annexed, the want of the devise aver, makes no difference, and the condition is just as effectual and fatal as if the will itself made a specific disposition of the estate to be thus invested. And we shall presently find this state of things to be precisely reversed, when we come to the question of notice of the consideration.

With these, and some other limited qualifications, or rather discrepancies, whoever will take the trouble to examine this branch of the law attentively, will find that the testator may impose reasonable and prudent restraints upon the marriage of the objects of his bounty, by means of conditions precedent, or subsequent, or by limitations, while he may not, with one single exception, impose perpetual celibacy upon the objects of his bounty, by means of conditions subsequent or limitations. That exception is in the case of a husband in making bequests or legacies to his own wife. He may rightfully impose the condition of forfeiture upon her subsequent marriage. It would be out of place, on the present occasion, to enter into the reasons of this exception, more than to say, that it is out of regard to the family of the testator, rather than to any morbid sensibility or jealousy toward one who might come after him, which might be supposed to have prompted the condition.

Nor is it our purpose, at the present time, to examine the subject, as to what may in other cases be considered a reasonable prudential restraint against imprudent marriages. The appropriate place for that, would be a regular treatise on the subject. An examination of the subject, will show that the courts have very rarely held such condition void, although it might appear harsh, arbitrary and unreasonable, so as it did not absolutely prohibit the marriage of the party, within the period wherein issue of the marriage might be expected. It is enough for our present purpose, and we will go no further now, for it is not necessary, that it has been no where held, or pretended, that an absolute prohibition of marriage till twenty-one years of age is not reasonable and lawful, and must not be upheld, as a good condition, the violation of which may defeat a vested estate. The condition, then, annexed to this devise, was proper, reasonable and lawful, and its violation must be held to have forfeited the estate devised, unless it can be saved by some other equally well settled principle of law.

This brings us to the last question to be considered, which, as it is the turning point in the case, will bear to be examined a little more minutely.

The facts of the case show, that all of the devisees of the estate in remainder, now in controversy, were the children and

heirs at law of the testator, and as such heirs at law, had expectations of this estate. In the absence of the will, each would have been entitled to his or her respective proportions of it, according to our statute of descent. When such is the case, the condition subsequent, the breach of which shall divest the estate which has become vested in the devisee by the will, must be shown to have been brought home to the knowledge of the devisee, before the breach, in order to mark the forfeiture. Nor is this principle confined in its scope and operations to wills or devises to heirs at law. It may, in more general terms, be stated thus : One who has estate or title real independently of the deed or instrument containing a condition of forfeiture, shall not be presumed to have notice of the condition, and he shall not be held to have incurred the forfeiture unless he committed the breach with knowledge of the condition and consequences. It is true that this question has but rarely arisen for adjudication, nevertheless, it is as well settled as any other principle of the common law, and is founded in as substantial reasons of justice, as we hope to show before we conclude.

The first case to be met with in the books, involving this principle, is Francis' case, 8 Co. Rep. 89 *b.* There, the owner of the premises in question, having first devised them to his heir at law, conveyed them to trustees, in trust for himself, for life, and remainder to his son and heir for sixty years, with a condition of forfeiture by his son if he did the prohibited act. In ignorance of the conveyance in trust, with the condition, he did the act, and it was held that he did not thereby forfeit his term, for the reason that he would have held the title to the premises if there had been no such deed as that which contained the condition.

The principle here first laid down and acted upon was distinctly stated and expressly approved in the case of *Williams* v. *Fry*, Sir T. Raymond's Rep. 236, and better reported as *Porter* v. *Fry*, 1 Vent. 199 ; although there the devisee was not entitled to take as heir, and hence could not receive the benefit of the rule.

The identical question arising in this case was expressly presented in the case of *Wolloon* v. *Fitzgerald*, 3 Mod. 28, and again decided in the same way. In this case, as well as in Francis' case, the condition was contained in a deed to trustees in trust for himself for life, remainder to his daughter Catherine, in tail.

Here, although the daughter, who was heir, had married in violation of the condition expressed in the deed, and had actual notice of it, yet, because there was not distinct proof that she had notice of the condition from the trustees, whose consent was required, it was held that she had not forfeited the estate in remainder.

The next case which we find, in which this question arose, was in chancery, where the same rule was adopted. It is the case of *Burliton* v. *Humfrey*, and came before Lord Chancellor Hardwick, in 1754, and is reported in 1 Ambler, 256. That was a devise to the heir, with the condition that she marry with the consent of one Humfrey. She married without his consent, and a forfeiture was claimed, and the Chancellor states the question thus : " Whether the daughter has forfeited the real and personal estate for want of such consent ;" and answers : " As to the real, this case comes within the reasoning in Francis', that notice is necessary to work a forfeiture in an heir at law, but not in a stranger." As to the personal estate, which was in like manner disposed of in the same clause of the will, he expresses doubts, for the reason that it vests in the executor, and not in the heir. And he disposes of that, finally, on another ground, which has been since much questioned by high authority, but it does not touch the case before us.

We now come to a more modern case, where all the previous cases, except the last one in Ambler, were referred to and carefully reviewed, and the rule again adopted and enforced. It is *Kenuck* v. *Beauclerk*, 11 East R. 657. There the devise was to the heir at law of the testator, and the condition broken was, that the devisee should assume a particular name, and reside upon a particular estate. In the very commencement of his opinion, Lord Ellenborough says : " That as Charlotte Carter Thelwell was heir at law to the testator, and was therefore entitled by descent, if the testator had made no will, she was not bound to residence until she had notice that there was a will, and could not lose the estate by non-residence, without such notice." Again, after referring to the preceding cases, where the question had arisen in courts of law, as well as that of *Randall* v. *Eeley*, Carter, 92, 170, which, it was claimed, was the other way, but which, he shows, was not the case ; but, admitting that it was, he says : " And the reason of the thing is so decidedly with those cases, that we have no hesitation in abiding by them, and holding *Randall* v. *Eeley* not to be law. Where a party is really ignorant of the existence of the instrument in which the condition is contained, and where he would have good title if there were no such instrument, it seems unreasonable to hold that a neglect of the terms of that condition should subject him to a loss of the estate ; it would encourage the concealing of the instrument, till a breach were incurred, so to decide."

The only other case to which we shall refer is a very late one, *Taylor* v. *Crisp*, 35 Eng. Com. Law R. 522, and which is expressly in point. There the testator devised the premises in

15

question to Sarah Taylor for life, remainder to his grandson, Thomas Taylor, but " upon this express condition and not otherwise," that he should, within three months after the death of the testator, convey certain leasehold estates to his three sisters. Thomas Taylor died before the termination of the life estate, without having conveyed the leasehold estates to his sisters, and leaving two sons, who were the lessors of the plaintiff, his heirs at law, and who were also the heirs at law of the testator. The case did not show whether Thomas Taylor had notice of the conditional limitation contained in his grand-father's will; and it was held that such notice could not be inferred but must be expressly proved ; and also, that, for the want of such notice, the devise should not be defeated for the non-performance of the condition. This case not only sustains the others to which we have referred, but it is also directly to the point, that notice to the heir and devisee cannot be inferred, but that it must be proved. See also Roper on Leg. 840, and Jarman on Wills, 809.

And this rule is in harmony with the general principles of law, which always lean hard against a forfeiture of estates once vested, and that it will not allow such forfeiture, where there has been no laches or misconduct. In the case before us, we must assume that the defendant did not know of the existence of the will, and much less of the condition which it contained, that she should not marry till she was twenty-one years of age, under the penalty of forfeiting her interest in her father's estate. In ignorance of the will, she supposed she was entitled to take as heir without any condition. When we look at this case as it is presented by the record, we see it would be a monstrous piece of injustice to enforce this forfeiture against her. Here was her elder brother, who was an executor named in the will, knowing of the condition of forfeiture, had an interest in keeping it from her, that she might, by doing the prohibited act, incur the forfeiture, that her portion might go to himself and the other heirs of the testator. Under the influence of this direct interest, he suffers her to go on in ignorance of the will, and marry only four months before she attained the age of twenty-one years, and now he comes forward and claims the benefit of the forfeiture, and insists upon depriving her of the portion devised to her by the will. To sustain this claim, would be to offer a premium for the commission of the most heartless frauds. No better case than this can be imagined, to illustrate the wisdom of the rule of law upon which we rest the present decision. As before remarked, we must assume that she was kept in ignorance of the condition, when it was the duty of the executor to inform her promptly, that she might have conformed

to her father's express wishes, or, if she chose to violate them with her eyes open, she then could have no cause to complain of hardship or injustice.    In this particular case, were we even permitted to indulge in probabilities, it is more likely that the executor kept her in ignorance of the condition, that he might share in the spoils, than that she would voluntarily relinquish so large an estate as this is, rather than postpone her marriage for a few months.    If the executor did, in fact, do his duty, and give her notice of the condition, it was the easiest thing in the world for him to show that fact.    But there is not, even in the petition, the least pretense that she had any knowledge of the condition, nor is there a particle of evidence in the report of the master, or in any other part of the record, that she had the slightest intimation of such a fact.    We have not the least doubt that, upon the soundest principles of law and morality, she must take the estate devised, discharged of the condition.

The decree must be affirmed.

*Decree affirmed.*