Mary A. Budlong, Appellant, v. Los Angeles Bible Institute of Los Angeles, California, et al., Appellees.

Gen. No. 9,329.

Opinion filed August 16, 1938.

HALL & DUSHER, of Rockford, for appellant.

WILLIAM D. KNIGHT, of Rockford, for certain appellees.

WALKER F. HULL, of Rockford, for certain other appellees.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

On or about December 28, 1927, Minnie S. Budlong executed her last will and testament and on February 11, 1928 duly executed a codicil thereto. On February 15, 1931, Mrs. Budlong died, leaving her daughter, Mary A. Budlong, and her two sons, Standish S. Budlong and Winthrop M. Budlong, her surviving. Her will and codicil were duly admitted to probate by the probate court of Winnebago county and her said two

sons were duly appointed executors of her will. In 1935, the daughter, Mary A. Budlong, instituted this suit and in her complaint alleged that her mother, subsequent to the execution of the will and codicil of December 28, 1927 and February 11, 1928 respectively, executed a subsequent will, which had been lost, that said last will expressly revoked the provisions of her former will and codicil and by the provisions of said last will, the testatrix divided her estate equally among her three children. The prayer of the complaint was that the subsequent lost will be established or in the alternative that if said subsequent last will be not established, that then the codicil executed on February 11, 1928 be decreed to be void and of no binding effect and the estate of the testatrix pass according to the provisions of the will of December 28, 1927. On April 7, 1937 the chancellor sustained the motion of the executors to dismiss this complaint and thereafter, by leave of court, an amended complaint was filed. This was also dismissed on motion of the defendants and by leave of court a second amended complaint was filed, which was also, upon motion, dismissed. The plaintiff elected to abide by her second amended complaint and from a decree dismissing said second amended complaint for want of equity, the plaintiff prosecutes this appeal.

The will of Minnie S. Budlong consisted of nineteen paragraphs and by it, the testatrix, after making several specific bequests, devised and bequeathed all of the rest of her estate to the People's Bank and Trust Company of Rockford, and to her said two sons as trustees, and directed the trustees to pay to her daughter one-third of the net income from her estate for a period of 15 years from the date of her death. Paragraph eleven of the will provided that at the end of the 15-year period, the trust should terminate as to the sons but should continue as to appellant during her

lifetime and provided that upon her death the corpus should become the property of the sons or in the event of their deaths, prior to the death of appellant, then to other named persons. Paragraph fourteen is as follows: "Should any beneficiary or beneficiaries under this my last will and testament, contest or oppose the Probate of this, my last will and testament, when the same is offered for Probate in the Probate Court of the County of Winnebago in the State of Illinois, or file a bill to set aside or contest this, my last will and testament, in any Court, then it is my will and I hereby direct that such beneficiary or beneficiaries under this, my last will and testament, as shall attempt to contest or oppose the Probate of this, my last will and testament, or attempt to set aside the same by a Bill in Chancery or other wise, shall immediately lost all benefit under this, my last will and testament, and I direct my Trustees hereunder to pay the income from the share or shares of such beneficiary or beneficiaries under the trust herein created under this, my last will and testament to those who do not contest or oppose the validity of this, my last will and testament, and on the expiration of the Trust herein created such beneficiary or beneficiaries as shall oppose or contest the Probate of this, my last will and testament, shall be and they are hereby barred from any participation of the division of the corpus of my estate on the expiration of the Trust herein created and my Trustees hereunder are directed to divide such share or shares among the beneficiary or beneficiaries under the Trust herein who do not oppose or attempt to contest this, my last will and testament."

The codicil executed on February 11, 1928 is as follows:

"Whereas in and by my said last will and testament, I did by Paragraph C. of the Tenth Clause and by the Eleventh Clause of my last will and testament leave

certain property in trust for the benefit of my daughter, Mary A. Budlong, and

"Whereas, I have discovered that my daughter, Mary A. Budlong, did obtain from me by subterfuge, a deed to Lots 28, 29, 41 and 42 in Block 22 of Budlong's Subdivision to the City of Rockford, in the City of Rockford, County of Winnebago and State of Illinois, and refuses to re-convey the same to me, and

"Whereas, my said daughter, Mary A. Budlong, is prosecuting suit against me for the appointment of a conservator for me, which said suit was decided in my favor in the Probate Court of the County of Winnebago, and which said suit, my said daughter, Mary A. Budlong, has appealed to the Circuit Court in the said County of Winnebago, and is continuing the prosecution of the same to my great annoyance and trouble;

"Now THEREFORE, unless my said daughter, Mary A. Budlong shall re-convey to me on or before the 1st day of March, A. D. 1928 said Lots Nos. 28, 29, 41 and 42 in said Block 22 of Budlong's Subdivision to the City of Rockford, and shall dismiss or cause to be dismissed on or before March 1st, 1928, the said suit for the appointment of a Conservator for me, now pending in the Circuit Court of Winnebago County on the appeal of the said Mary A. Budlong, from the decision of the Probate Court of the County of Winnebago, it is my will and I hereby direct that the said Mary A. Budlong shall not participate in any manner in any estate of which I may die seized or possessed and I direct that the Trust Fund provided for in Paragraph C. of the Tenth Clause and in the Eleventh Clause of my said last will and testament for the benefit of Mary A. Budlong shall be transferred by my Trustees named in my said last will and testament to the Trust Fund in the Tenth and Eleventh Clauses of my said last will and testament for the benefit of Standish S. Budlong and Winthrop M. Budlong and the income therefrom

shall be paid to and the final distribution of my estate shall be made to my sons, Standish S. Budlong and Winthrop M. Budlong, in accordance with the provisions of Paragraph D. and E. of the Tenth Clause of my said last will and testament and the final distribution of my estate as provided in the Eleventh Clause of my said will and testament shall be made to Standish S. Budlong and Winthrop M. Budlong, as provided in the Eleventh Clause of my said last will and testament to the exclusion of the said Mary A. Budlong.''

The second amended complaint, in addition to setting forth the will and codicil of the said Minnie S. Budlong, alleged that the codicil was executed without the knowledge of the plaintiff; that no request was ever made upon her to dismiss the appeal in the circuit court, to which court the proceedings for the appointment of a conservator for Minnie S. Budlong had been removed; that she did not know said provisions were contained in any instrument executed by her mother and that her mother never made any request upon her to dismiss said suit or to reconvey the lots described in the codicil on or before March 1, 1928; that plaintiff did not know of said provisions or ever hear thereof until after the death of her mother. The second amended complaint further alleged that for a long time prior to the date of the codicil the brothers of the palintiff had sought to alienate the testatrix from the plaintiff and to cause testatrix to lose the high regard and love which testatrix at all times entertained for the plaintiff; that as a part of said scheme said sons induced their mother to leave her home, which she had occupied with the plaintiff for many years and induced her to go to the home of Standish S. Budlong, where she was kept, contrary to her desires, for a long time and until December 27, 1928; that testatrix had become so depleted by age that she was under the influence of her son Standish, and

could not do as she desired; that during this period of time testatrix frequently desired to visit the plaintiff but was prevented from so doing by her sons; that plaintiff went to visit her mother during this time but was not permitted to see her alone; that during this time testatrix wrote many affectionate and loving letters to the plaintiff and requested her sons and members of their families to take her to the home in which the plaintiff resided; that they did so but would only permit testatrix to remain there five or ten minutes and allowed the plaintiff to visit with her mother only in the presence of the persons who brought her; that about June 30, 1930 testatrix got away from the home of her son Standish and returned to the home where the plaintiff resided and shortly thereafter wrote a friend advising her friend that plaintiff had been ill but stating that plaintiff was a good companion to her. Two letters or notes from the mother to the daughter dated March 4 and September 20, 1928 respectively were set out in the second amended complaint, each concluding with terms of love and affection.

The second amended complaint further averred that the statement in the codicil that the plaintiff had by subterfuge induced her mother to deed four lots to her is not true and was not intentionally made by testatrix but is the emanation of the mind of some one else; that on June 20, 1928 the testatrix stated in writing her mental reactions as to the conservatorship suits brought by her against plaintiff and by plaintiff against her and wrote, "incidentally the affection which existed between Mamie and I (meaning the plaintiff and deceased) which would make me wish to give her the four lots she desired and so signed it before a Notary." It was further alleged that the will and codicil had been admitted to probate more than a year before filing the instant suit; that the provisions in the codicil are in the nature of a forfeiture; that plaintiff had no opportunity to comply with its terms

as she knew nothing thereof until long after March 1, 1928; that the will as modified by the codicil is vague and uncertain and should be construed by the court and the court should hold that the codicil was of no force and effect and a decree should be entered finding that plaintiff was entitled to take under the provisions of the will of the testatrix.

Counsel for appellant state that from a reading of the codicil alone it would appear that at the date of its execution the relations of the mother and daughter were strained and that there was not that love and affection which ordinarily exists between mother and daughter and which had existed up to that time "but," continue counsel, "when viewed in the light of the surrounding circumstances as set forth in the second amended complaint, it is apparent that the relations between them were not strained but close and affectionate." From this premise, counsel argue that it would be incredible to believe that the mother intended that her daughter should forfeit, without notice, the provisions of the will made for her benefit, if she did not comply with the terms and provisions of the. codicil. Counsel state that the amended complaint discloses that within four days after the date of the expiration of the time within which the daughter was required to do certain things in order to take under the will of her mother, appellant received a letter from her mother, written from Elizabeth, Illinois, in which she sent appellant her love and signed herself "Mother." No reference was made in this letter by the mother to her property or its disposition, she commented upon the weather and advised her daughter that she expected to return on the morrow. Counsel also argue that in view of the fact that at one time the mother stated she had conveyed four lots to her daughter because of her affection for her daughter, indicated that the conveyance referred to in the codicil was a voluntary one and that therefore her statement in the

codicil to the effect that appellant had obtained the deed by subterfuge was untrue and that what the mother really intended to accomplish by the codicil was that before appellant should forfeit what the will gave her she, the daughter, should have been notified of the provisions of the codicil and given an opportunity to comply therewith.

The intention of the testatrix can only be determined from the language she employed. In the codicil she says her daughter obtained from her by subterfuge a deed to four lots in the city of Rockford and that she, the daughter, refuses to reconvey them to her mother. She also says in the same instrument that her daughter, at that time, February 11, 1928, was prosecuting a suit against her, the object of which was to have her mother placed under conservatorship and states that the prosecution of that suit was causing her great annoyance and trouble. After so stating, she provides that unless the daughter reconveyed these lots to her and dismissed or caused to be dismissed the conservatorship proceedings on or before March 1, 1928, that then she should not participate in her mother's estate as her will had previously provided. There is no ambiguity or uncertainty here. The language employed can only be read and understood to mean one thing and that is that appellant must within a given period voluntarily do two things, one was to reconvey the real estate and the other was to dismiss the conservatorship proceedings. The language used indicates that appellant had been requested to reconvey the four lots but had refused. As to the conservatorship matter, the mother states that the proceeding is pending in the circuit court, having been appealed to that court by appellant. The amended complaint discloses that the mother lived more than three years after the codicil was executed and that the will and codicil have both been duly proven and admitted to probate and that the

time to contest expired before the original complaint herein was filed. An examination of the provisions of this codicil discloses that its meaning is not vague or uncertain nor does it need to be construed and a court of equity cannot acquire jurisdiction to construe such an instrument simply because the pleader alleges the contrary. *Buckner v. Carr,* 302 Ill. 378, where it is said: ''When the record shows that no question requiring construction exists, then the court can not acquire jurisdiction to construe a will by the allegation that there is such a question.''

It must be kept in mind that a will speaks, as frequently said by the authorities, from the death of the testator or testatrix. When Mrs. Budlong executed her will on December 28, 1927 she must have desired that her property pass as she provided in that instrument. After making certain specific bequests she provided that each of her three children should enjoy one-third of the net income of the residue of her estate for 15 years from the date of her death. The division was equal except appellant's share was to be held in trust during her lifetime, while the trust, so far as the sons were concerned, was to terminate at the end of the 15-year period. The property which passed by her will belonged to her. She was not required to devise or bequeath any property to appellant. She had a right to impose any legal conditions or restrictions which she desired. And when, in her opinion, her daughter did something which she considered wrongful, she had a right to rescind her former action or annex a condition to her enjoyment of the provisions she had seen fit theretofore to make for her. She did only what the law gave her a right to do. Had Mrs. Budlong so wished she could have given her daughter notice of the provisions of her codicil at the time she executed it or at any subsequent time or she could have made the provisions of the codicil effective only in the event the

lots were conveyed to the trustee of her estate within a given period after her death, but she did not do so, and had she done so and such provision was unknown to appellant and the executors and trustees of her estate had not revealed such provisions to her until after the period of limitation had expired, then the law as announced in the cases relied upon by appellant and hereinafter referred to would apply. What the mother's motives were we do not know. What prompted her to execute the codicil is immaterial. From a reading of the codicil it is apparent that at the time of its execution the mother was of the opinion that her daughter had wrongfully obtained from her a deed to certain property and was wrongfully prosecuting a proceeding to place her mother under conservatorship and the mother determined that unless she, the daughter, voluntarily reconveyed the real estate to her and voluntarily dismissed the proceedings in the circuit court within a limited time that then she, the daughter, should be precluded from participating in her mother's estate. In doing this, the mother did what the law permitted her to do and no court, under the guise of construction, would be warranted in holding the provisions of this codicil of no force or effect.

*Shackelford v. Hall,* 19 Ill. 212, cited and relied upon by counsel for appellant, was a suit to partition the land of which Henry Hall died seized. In his will he devised and bequeathed his real and personal estate to his wife for life, or during her widowhood and at her death to his four named children equally. His will then stated: ''It is my desire and will that none of my children now under the age of twenty-one years shall marry until they shall each one of them attain the age of twenty-one years. To this end, I stipulate and will, that in case any one of them now under the age of twenty-one years shall marry, then and in that event, he, she or they shall only be entitled to receive the sum of one dollar out of my estate, as his, her or their por-

tion thereof.'' The court held that the devise was one with a condition subsequent and that upon the death of the testator, the widow became vested with a life estate (if not sooner terminated by her marriage), and the remainder became vested in the four named children. As to those children, however, who were, at the time of the death of the testator, under 21 years of age, their estate was subject to be defeated by their marriage before they should attain that age. It appeared that the widow and one of the sons were appointed executors and after the death of the testator, Eliza, a daughter and a devisee, married four months before she attained the age of 21 years but was ignorant of the terms of the will. The court held that such a devise with a condition that the devisee should not marry until he or she arrives at the age of 21 is lawful and a violation of the condition, after notice, would work a forfeiture of the estate devised but that the violation of such a condition will not work a forfeiture if the devisee was also heir at law unless it appears that the devisee had been expressly notified of the condition upon which the devise depended. In the course of its opinion the court, after announcing this rule, said: ''And this rule is in harmony with the general principles of law, which always lean hard against a forfeiture of estates once vested, and that it will not allow such forfeiture, where there has been no laches or misconduct. In the case before us, we must assume that the defendant did not know of the existence of the will, and much less of the condition which it contained, that she should not marry till she was twenty-one years of age, under the penalty of forfeiting her interest in her father's estate. In ignorance of the will, she supposed she was entitled to take as heir without any condition. When we look at this case as it is presented by the record, we see it would be a monstrous piece of injustice to enforce this forfeiture against her. Here was her elder brother, who was an executor named in

the will, knowing of the condition of forfeiture, had an interest in keeping it from her, that she might, by doing the prohibited act, incur the forfeiture, that her portion might go to himself and the other heirs of the testator. Under the influence of this direct interest, he suffers her to go on in ignorance of the will, and marry only four months before she attained the age of twenty-one years, and now he comes forward and claims the benefit of the forfeiture, and insists upon depriving her of the portion devised to her by the will. To sustain this claim, would be to offer a premium for the commission of the most heartless frauds. No better case than this can be imagined, to illustrate the wisdom of the rule of law upon which we rest the present decision. As before remarked, we must assume that she was kept in ignorance of the condition, when it was the duty of the executor to inform her promptly, that she might have conformed to her father's express wishes, or, if she chose to violate them with her eyes open, she then could have no cause to complain of hardship or injustice. In this particular case, were we even permitted to indulge in probabilities, it is more likely that the executor kept her in ignorance of the condition, that he might share in the spoils, than that she would voluntarily relinquish so large an estate as this is, rather than postpone her marriage for a few months. If the executor did, in fact, do his duty, and give her notice of the condition, it was the easiest thing in the world for him to show that fact. But there is not, even in the petition, the least pretense that she had any knowledge of the condition, nor is there a particle of evidence in the report of the master, or in any other part of the record, that she had the slightest intimation of such a fact. We have not the least doubt that, upon the sound-est principles of law and morality, she must take the estate devised, discharged of the condition.''

In *Morris v. Mull*, 110 Ohio St. 623, 144 N. E. 436, also cited by counsel for appellant, a mother be-

queathed her daughter $2,000 and provided "if my said daughter Myra is not living at the time of my death, or if she does not claim the legacy herein and hereby bequeathed to her, within two years after my death, then and in that event, I do hereby give and bequeath to my said son, Frank S. Mull, to be paid to him at the expiration of two years from and after my death, the said legacy of $2,000.00 herein bequeathed to my daughter Myra." It appeared that the will was executed on September 17, 1918 and nominated her son, Frank S. Mull, executor. The testatrix died on November 22, 1918 and on Dec. 6, 1918 Frank S. Mull was appointed and qualified as executor. On January 7, 1921 he presented his final account as executor and credited to himself the $2,000 legacy, claiming that by reason of the failure of his sister Myra to claim the same within two years from the death of his mother, the same became his property. In May, 1921 the sister Myra first learned of her mother's death through a sister-in-law and demanded of her brother the payment to her of said sum of $2,000, her brother refused and she brought suit. It appeared that the brother had been the executor also of his father's estate and had had correspondence with his sister, who then resided in Seattle, on June 18, 1918, that she continued to there reside although on November 30, 1918 in his application for letters testamentary in his mother's estate, he stated his sister's residence was unknown and in 1921 when he filed his final account, he reported that he did not know the address of his sister and had not heard from her for more than four years last past. The court held that the relation between executor and legatee is that of trustee and *cestui que trust,* that a fiduciary relation and obligation exists as to notice and good faith and fidelity in discharging the terms of the trust, that by naming her son executor of her estate, the mother meant for him to use the knowledge he had of the whereabouts of his sister, growing out of the

settlement of the father's estate and that he should have endeavored in good faith to locate and notify her of the terms of the mother's will, that it was inconceivable that the mother intended her daughter should be deprived of her legacy because she had no opportunity to know of the fact of her mother's death and that it was not to be supposed that the mother intended that her son, her executor, should receive the sister's legacy as a reward of not having exercised all due diligence to follow up the information and means of information that he had relative to the whereabouts of. his sister, that his conduct amounted to a fraud upon his sister and it would not be conscionable to permit such conduct to take repose behind the fact that the letter of the will or the statute did not in express terms direct greater activity upon his part.

Neither of these cases are decisive of or helpful in disposing of the questions presented by this record. In both cases cited the court held that it was the duty of an executor to exercise good faith in dealing with a devisee or legatee and that good faith required the executor to speak, if as a result of silence, a legatee or devisee might be misled or might be deprived of the benefits of a legacy or devise if the executor had imparted to him the knowledge or information concerning the estate which he, the executor, possessed. We have examined the other cases cited in appellant's brief but find they are not in point and no good purpose would be served by referring to them.

In its motion to dismiss, one of the reasons assigned by appellees was that appellant has no rights or interest in the estate of Mary A. Budlong because the fourteenth paragraph of her will provided that in the event any beneficiary contested or opposed the probate thereof or filed a bill to set it aside or contest it, that then such beneficiary should lose all benefit thereunder. The motion further recited that the will and codicil

were duly admitted to probate on May 5, 1931, that on May 3, 1932 appellant filed her complaint to contest the same and that said proceeding was dismissed for want of prosecution on June 22, 1933. Counsel for appellees insist that by reason of the foregoing appellant is precluded from maintaining this suit. It is unnecessary for us to consider the validity of the provisions contained in the fourteenth paragraph of Mrs. Budlong's will. It has been held, however, that such provisions are valid. *In re Shirley's Estate,* 180 Cal. 400, 181 Pac. 777; *In re Kitchen,* 192 Cal. 384, 220 Pac. 301. These matters do not appear upon the face of the amended complaint and the Practice Act, Ill. Rev. Stat. 1937, ch. 110, § 172 [Jones Ill. Stats. Ann. 104.048] requires that a motion containing such matters be supported by affidavit, which was not done.

Under the statute if appellant desired to contest the validity of her mother's will or codicil, she must have done so by filing her complaint within one year after the date of its probate. Ill. Rev. Stat. 1937, ch. 148, sec. 7 [Jones Ill. Stats. Ann. 110.219]. From the allegations of the amended complaint it appears that the time for filing a contest elapsed before the present proceeding was instituted. The relief sought here is that a decree be entered finding that the codicil was not effective or binding upon appellant because no notice was given her of its provisions and therefore she had no opportunity to avoid the effect thereof. While many of the allegations of the second amended complaint were conclusions of the pleader, the facts therein recited and upon which appellant seeks to predicate such a decree do not, in our opinion, entitle appellant to the relief or any part thereof demanded. The chancellor did not err in sustaining appellee's motion to dismiss and the decree appealed from will therefore be affirmed.

*Decree affirmed.*