# JANE GOODWIN HARBIN v. MRS. W. J. JUDD et al.
## —340 S. W. (2d) 935.

Middle Section.  July 1, 1960.

Certiorari Denied by Supreme Court December 9, 1960.

Trabue, Sturdivant & Harbison, Nashville, for appellant.

Ed R. Davies, Nashville, for guardian ad litem.

HUMPHREYS, J.  This is a suit for the partition and sale of certain real estate in Nashville, Tennessee.  The only question presented by the appeal is the meaning and

interpretation of a deed to the property, executed in 1900. The proper distribution of the proceeds of sale depends upon the construction and interpretation of this deed. The particular provisions of the deed for our consideration and construction are as follows:

"First: Neither the whole of said property nor any interest therein shall be sold or otherwise disposed of except with the consent of said Trustee or her successor in the trust evidenced by the Trustee joining the deed or instrument.

"Second: Upon the marriage of any of said beneficiaries or equitable owners, his or her interest shall vest in and become the property equally of the unmarried sisters or sister, during her or their unmarried state, but upon the marriage of the last unmarried sister, the property shall vest or re-vest in all of the aforesaid beneficial or equitable owners, in the said proportions or percentages stated; and this trust shall cease and terminate and said beneficial owners shall become the legal as well as equitable owners in the proportions stated in fee without conditions, limitations or restrictions."

The Chancellor held the provision of the deed divesting the interest of the grantees upon their marriage to be void.

The facts are as follows: In 1894, Arthur Goodwin was appointed guardian for seven of the ten children of Mr. and Mrs. J. E. Goodwin, who were minors. The mother of the ten children predeceased their maternal grandmother, who later died leaving a tract of land in Giles County to these ten children. It was with respect to this estate that Arthur Goodwin was appointed guardian. The

Giles County land was sold and the proceeds thereof were invested in the property covered by the aforementioned deed. The purchase of the property was approved by a decree of the Chancery Court at Nashville, on March 19, 1901. At the time of the purchase of the property, and ratification by the Chancery Court, all of the ten children were adults except three. By that time the two older brothers had conveyed their interest in the fund to their brothers and sisters. The property cost $6,000, and the guardian having only $4,900 on hand, two of the sisters, Mary Lou Goodwin and Rose F. Goodwin, agreed personally to assume a mortgage for the difference. The deed conveyed the property to Mary Lou Goodwin as trustee for herself and her brothers and sisters in the following proportions:

| | |
|---|---|
| Mary Lou Goodwin | 20% |
| Rose F. Goodwin | 20% |
| Helen Marr Goodwin | 11% |
| Anne Goodwin | 11% |
| Elizabeth B. Goodwin | 11% |
| Alice E. Goodwin | 11% |
| William Minter Goodwin | 8% |
| Harold Goodwin | 8% |

upon the conditions and limitations copied above. In Arthur Goodwin's suit as guardian, to have the purchase of the house and lot ratified, it was averred the conditions and limitations in the deed were desired by the children. The answers of the guardian ad litem for the minor defendants referred to these limitations and conditions as being in the best interest of the minors and requested that they be ratified and approved by the court. The Clerk and Master's report found the limitations tended to furnish a home for a large family and to prevent the

independent action of one from disturbing all the others, that in his opinion, the investment was wise and judicious, to the best interest of the minor defendants, and should be approved by the Court. The Chancellor approved this report. Subsequent to its acquisition the property was used as a home for the beneficiaries of the trust.

All of the brothers and sisters married except Mary Lou Goodwin, Rose F. Goodwin, and Harold Goodwin, who died intestate in 1918. Mary Lou Goodwin died testate in 1954, leaving her entire estate to her sister, Rose F. Goodwin. Rose F. Goodwin died unmarried and intestate in 1957. Only one member of the original family is still living, William Minter Goodwin, of New Orleans, La.

The Chancellor held that an active trust was created under the terms of the original deed but that the provision for divesting the interest of the beneficiaries upon marriage constituted a general restraint against marriage and was void; that the title to the property having originally vested in the children in the precentages set forth in the deed, it was not divested by their marriage and the named children took vested fee simple estates in the percentages set forth in the deed, subject only to the trust which terminated upon the death of Miss Rose F. Goodwin, the purposes for which it was created having been accomplished. Jane Goodwin Harbin, one of the heirs of Rose F. Goodwin, whose interest would be larger if the deed is valid has appealed. The Chancellor's decree is defended by the guardian ad litem for the heirs whose interest is larger if the deed is void.

The errors assigned are in substance that the deed is valid since the provision as to marriage is partial and

reasonable, or is a limitation, not a condition subsequent, and was imposed not to prevent marriage but for a lawful purpose, and that proceeds of sale of the property should be distributed on the basis the deed is valid.

While it is agreed total restraints of marriage are void, and partial restraints are valid only if reasonable, both parties agree that a provision even in absolute restraint of marriage is valid if it is a limitation on the duration of ownership rather than a condition subsequent requiring a forfeiture upon marriage. This is stated as a proposition of law in appellant's brief on page 10 and is a basis of an assignment of error. In appellee's reply brief it is stated, "Regardless of logic, it is well established as one of the niceties of the law that a provision in absolute restraint of marriage is valid if it may be termed a limitation on the duration of ownership, but void if it is to be called a condition subsequent requiring a forfeiture upon marriage." We agree that this is the law. In 35 Am. Jur. Marriage, sec. 258, we find the following: "The distinction is therefore universally recognized that while a condition in absolute restraint of marriage is invalid, a limitation until marriage is good". The text points out that while it would seem that the policy of the law would be as much violated by a forfeiture upon condition of marriage as by a limitation over in the event of marriage the key to the situation really is that the rule against restraints on marriage is not directed against all total restraints and such partial restraints as are unreasonable, but only against such restraints as are, under the circumstances of each particular case, unreasonable, irrespective of whether they are partial or total. In Thompson on Real Property, Permanent Edition, Vol. 4, sec. 2075, it is said: "A condition in restraint of marriage is

invalid when imposed as a condition subsequent, although it is valid if made as a conditional limitation.''

It is contended by appellee that the provision in restraint should be construed as a condition subsequent because the trust instrument states the property is conveyed ''upon the following conditions and limitations'', and contains the words ''upon the marriage of''. It is said these are the classic words of art with which a condition subsequent is created. While this may be true, it does not necessarily follow that the bare employment of these words and terms in a provision will in and of itself create a condition subsequent. Woodruff v. Woodruff, 44 N. J. Eq. 349, 16A. 4, 1 L. R. A. 380; Arthur v. Cole, 56 Md. 100; 40 Am. Rep. 409. And, though we cite cases from other jurisdictions as authority for our statement, what we say is sustained by the rule in Tennessee that an instrument will be construed, and its effect determined, from a consideration of the whole of it, not a few of its words. It could be better argued from the language, ''upon the following conditions and limitations'', that the word ''limitations'' was used for the purpose of bringing the trust provisions within the exception recognized by both parties, to avoid any question of its validity. The employment of both the word ''conditions'' and the word ''limitations'' creates a character of ambiguity and under the well-settled rule that conditions subsequent are not favored and that ''no provision will be interpreted to create such a condition if the language will bear any other reasonable interpretation'', 19 Am. Jur., Estates, sec. 65, 527, we would be compelled to hold the words introduce a limitation, not a condition subsequent. However, we prefer to determine the nature of this provision by reference to the definition of a condition subse-

quent found in our cases. In Yarbrough v. Yarbrough, 151 Tenn. 221, 269 S. W. 36, in an opinion written by the late Chief Justice Grafton Green, the difference between a condition subsequent and a conditional limitation is discussed at length.

"The distinction between a condition and a conditional limitation is nowhere more clearly stated than by Bigelow, J., in Brattle Square Church v. Grant, 3 Gray (Mass.), 142, 63 Am. Dec. 725, which language is quoted and adopted in Fowlkes v. Wagoner (Tenn. Ch. App.), 46 S. W. 586, as follows:

" 'By the common law, a condition annexed to real estate could be reserved only to the grantor or devisor and his heirs. Upon a breach of the condition, the estate of the grantee or devisee was not ipso facto terminated, but the law permitted it to continue beyond the time when the contingency upon which it was given or granted happened, and until an entry or claim was made by the grantor or his heirs, or the heirs of the devisor, who alone had the right to take advantage of a breach. 2 Bl. Comm., 156; 4 Kent, Comm. (6th Ed.), 122, 127. Hence arose the distinction between a condition and a conditional limitation. A condition, followed by a limitation over to a third person in case the condition be not fulfilled, or there be a breach of it, is termed a "conditional limitation." A condition determines an estate after breach, upon entry or claim by the grantor or his heirs, or the heirs of the devisor. A limitation marks the period which determines the estate, without any act on the part of him who has the next expectant interest. Upon the happening of the prescribed contingency, the estate first limited comes at once to an

end, and the subsequent estate arises. If it were otherwise, it would be in the power of the heir to defeat the limitation over, by neglecting or refusing to enter for breach of the condition. This distinction was originally introduced in the case of wills, to get rid of the embarrassment arising from the rule of the ancient common law, that an estate could not be limited to a stranger upon an event which went to abridge or destroy an estate previously limited. A conditional limitation is therefore of a mixed nature, partaking both of a condition and of a limitation; of a condition because it defeats the estate previously limited; and of a limitation, because, upon the happening of the contingeny, the estate passes to the person having the next expectant interest, without entry of claim.' '' 151 Tenn. 230-231, 269 S. W. 38.

In 2 Blackstone's Commentaries, 155, we find the following:

"Yet, though strict words of condition be used in the creation of the estate, if, on breach of the condition the estate be limited over to a third person, and does not immediately revert to the grantor or his representative. * * * this the law construes to be a limitation, and not a condition; because if it were a condition, then upon the breach thereof, only the grantor or his representatives could avoid the estate by entry."

Tested by this definition it is obvious the provision under consideration is not a condition subsequent but a conditional limitation and valid under the rule of law agreed upon by both parties and this court.

■ ■ While our holding the provision is a limitation is sufficient to sustain the assignments of error, we go further and hold that the provision is not an invalid restrain upon marriage since it is clear from the instrument and from the facts of the case it was not made with the intention of restraining marriage to an unreasonable degree, but for the primary purpose of providing a home for all of the children which could not be disturbed or broken up by the subsequent marriage of one of them, the marriage provision being simply incidental to this purpose. We believe we must determine the reasonableness of restraint, not alone upon the terms of the provision as urged by appellee, but the relation of the parties and the purpose for which the restraint was imposed, and the facts surrounding the imposition of the restraint must be taken into consideration. Crawford v. Thompson, 91 Ind. 266, 46 Am. Rep. 598; In re Liberman, 279 N. Y. 458, 18 N. E (2d) 658, 122 A. L. R. 1; Crowder-Jones v. Sullivan, 9 Ont. Law Rep. 27, 14 B. R. C. 56, 4 Ann. Cas. 729. The restraint in the provision under consideration was agreed upon by all the parties except the three minors, and as to them the Chancery Court, upon pleadings presenting the issue, found the limitation was reasonable. Thus, the limitation was not imposed upon the parties to prevent marriage but was assumed by them upon an agreement made between themselves for another purpose to which this provision only contributed.

Also operative here is the general rule applicable to *contracts* in restraint of marriage as distinguished from restraints in deeds of gift and wills. This rule is that though provisions in contracts in restraint of marriage may be void on grounds of public policy, the rule only applies to such restraints as are unreasonable, having

regard to the relation of the parties and the object of the contract.

American Law Institute Restatement of the Law of Contracts, Vol. 2, sec. 581, state the rule:

"Sec. 581. Bargain in Restraint of Marriage.

"A bargain not to marry, or to be subject to loss or deprived of profit in case of marriage, or a bargain to hinder or prevent the marriage of another, is illegal, unless the bargain is otherwise reasonable and the restraint is incidental to another lawful purpose of the bargain."

In Williston on Contracts, Revised Ed., Vol. 6, secs. 1741, 4926, it is said:

"The modern law regards bargains and conditions in restraint of marriage as only prima facie illegal and will accord them validity if the restraint is shown to be reasonable under the circumstances."

As already said, we think, in view of all the facts and circumstances of this case, and especially in view of the decree of the Chancery Court in 1901, under which all of the parties have lived since, that the provision is not unreasonable and thus is not void.

Tennessee cases not to the contrary of our opinion, but which tend to sustain it, are Hawkins v. Skeggs, 29 Tenn. 31; Hughes v. Boyd, 34 Tenn. 512; Duncan v. Phillips, 40 Tenn. 415, 417; Herd v. Catron, 97 Tenn. 662, 663, 37 S. W. 551, 37 L. R. A. 731; Overton v. Lea, 108 Tenn. 505, 68 S. W. 250.

For the reasons and upon the law set forth in this opinion, we sustain the assignments of error and remand the case to the Chancery Court of Davidson County for further proceedings in accordance herewith. The costs will be paid from the proceeds of sale and the Chancellor will fix the fee of the guardian ad litem for services in this court and for further services in Chancery Court, if no provision has heretofore been made therefor.

Hickerson and Shriver, JJ., concurring.