IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
AUGUST 24, 2005 Session

## ANNIE B. COCHRAN v. ROBINHOOD LANE BAPTIST CHURCH, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. 108014-2     Arnold B. Goldin, Chancellor**

_____

**No. W2004-01866-COA-R3-CV - Filed December 27, 2005**

_____

In this appeal, we are asked by the appellant to determine whether the chancery court erred when it granted summary judgment to the appellees, finding that there was no consideration to support the Pastor's Spouse Benefits agreement between the parties and that the theory of promissory estoppel is inapplicable in this case. On appeal, the appellant asserts that her presence as first lady of the church, her loss of benefits previously received from the Church, and/or the restraint of marriage provision in the agreement constituted legally adequate consideration for the Agreement. In the alternative, the appellant asserts that the doctrine of promissory estoppel is applicable in this case. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Reginald L. Eskridge, Janelle R.Eskridge, Memphis, TN, for Appellant

Herschel L. Rosenberg, Memphis, TN, for Appellees

**OPINION**

### I.   FACTS & PROCEDURAL HISTORY

On September 18, 1981, Reverend Eugene Cochran ("Reverend Cochran") began his tenure as Pastor of Robinhood Lane Baptist Church (the "Church"). Thereafter, Reverend Cochran maintained the position of head pastor at the Church until his death on August 20, 1995. In return for his services, the Church paid Reverend Cochran a salary as well as providing him with certain additional benefits such as cell phone services, beeper services, lawn services, and gas and vehicle maintenance services. At Reverend Cochran's request, the Church also accorded the majority of

these benefits directly to Reverend Cochran's wife, Mrs. Annie Cochran ("Wife" or "Appellant").

Before his death, Reverend Cochran spoke to several deacons of the Church requesting that the Church provide for Wife if the Church was able. On September 3, 1995, the Church entered into an agreement (the "Agreement") with Wife wherein the Church agreed to provide Wife with $783.56 on the first and third Sunday every month until September 5, 2010 and would provide lawn services for Wife's residence. Pursuant to the agreement, Wife would receive these benefits until one of two terminating events occurred: (1) her death; or (2) she remarried.[1] However, if she remarried within five years of the inception of the contract, Wife would continue to receive these benefits for five years total. If Wife remarried after five years, she would no longer receive any benefits. Moreover, the agreement terminated all benefits that Wife previously received from the Church under the Church's oral agreement with Reverend Cochran for his services as pastor.

In March 1996, the Church discontinued making payments to Wife. On August 9, 1996, Wife filed suit against the Church as well as Keiron C. Cochran, Kenneth Mallary, Cloyd Scales, Floyd Scales, Frank Tuggle, Sr., Tommy L. Walker, Sr., Donald Williams, Sr., and David Ricks (collectively, the "Church Board of Officers, Deacons, and Trustees" and collectively with the Church, the "Defendants" or "Appellees") seeking injunctive relief and/or damages for breach of contract and declaratory judgment. On October 9, 1996, Wife amended her complaint to include the theory of promissory estoppel as a justification for upholding the contract.

On November 15, 2000, the Church Board of Officers, Deacons, and Trustees, with the exception of Keiron C. Cochran, filed a motion to dismiss them as defendants. On February 27, 2001, the Defendants filed a motion for summary judgment. On June 24, 2004, the chancery court granted the motion for summary judgment as to the Church. The chancery court did not entertain the motion to dismiss because the motion was rendered moot by the chancery court's earlier order. On May 17, 2005, the chancery court amended its order to grant the motion for summary judgment as to all of the Defendants.

## II. ISSUES PRESENTED

Appellant has timely filed a notice of appeal and presents the following issues for review:

1. Whether the chancery court erred when it granted summary judgement finding that the contract between Mrs. Cochran and the Church was not supported by legally adequate consideration; and
2. Whether the chancery court erred when it granted summary judgment finding the doctrine of promissory estoppel was inapplicable.

For the following reasons, we affirm the decision of the chancery court.

---

[1] The Agreement also provided that the Church would discontinue the lawn services if Wife sold, moved, or leased her residence in addition to the other two terminating events.

### III.   STANDARD OF REVIEW

A court may grant summary judgment when a moving party establishes "that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law." Tenn. R. Civ. P. 56.04 (2005). "On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Calabro v. Calabro*, 15 S.W.3d 873, 875 (Tenn. Ct. App. 1999) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). "Since our inquiry involves purely a question of law, no presumption of correctness attaches to the trial court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met." *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995) (citing *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991)).

### IV.   DISCUSSION

#### A.   *Consideration*

On appeal, Appellant contends that summary judgment inappropriate in this case. Our analysis in reviewing a grant of a motion for summary judgment begins with determining whether there are any disputes of material facts in this case. *McGee v. Best*, 106 S.W.3d 48, 58 (Tenn. Ct. App. 2000) (citing Tenn. R. Civ. P. 56). If there are any disputes as to any genuine issues of material facts, then summary judgment is inappropriate. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993) (citing *Poore v. Magnavox Co.*, 666 S.W.2d 48, 49 (Tenn. 1984)). In this case, the parties do not dispute any material factual issues. As a result, our analysis turns to whether Appellees are entitled to judgment as a matter of law.

"Where the proof is undisputed and where no conflicting inferences may be drawn, the question of whether an act or forbearance constitutes consideration for a contract is a question of law." *Bratton v. Bratton*, 136 S.W.3d 595, 601 (Tenn. 2004) (citing *Applewhite v. Allen*, 27 Tenn. (8 Hum.) 697, 700 (Tenn. 1848); *Estate of Hordeski v. First Fed. Sav. & Loan Ass'n of Russell County, Ala.*, 827 S.W.2d 302, 304 (Tenn. Ct. App. 1991)). Thus, summary judgment is appropriate if the consideration supporting the Agreement is inadequate as a matter of law.

"All contracts in writing signed by the party to be bound, or the party's authorized agent and attorney, are prima facie evidence of a consideration." T.C.A. § 47-50-103 (2005). In such case, "[t]he burden of overcoming the presumption of consideration in a validly executed contract is upon the party asserting lack of consideration." *Long ex rel. Gene Langley Ford, Inc. v. Langley*, No. W2001-01490-COA-R3-CV, 2002 Tenn. App. LEXIS 2865, at *14 (Tenn. Ct. App. Apr. 23, 2002) (citing *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. App. 1991)). "For there to be a consideration in a contract between parties to the contract it is not necessary that something concrete and tangible move from one to the other. Any benefit to one and detriment to the other may be a sufficient consideration." *Walker v. First State Bank*, 849 S.W.2d 337, 342 (Tenn. Ct. App. 1992) (citing *Palmer v. Dehn*, 198 S.W. 827, 828 (Tenn. Ct. App. 1946)).

On appeal, Appellant contends that (1) Appellant's presence at the Church as first lady of the Church; (2) Appellant's loss of benefits previously received from the Church; and/or (3) Appellant's restraint of marriage pursuant to the Agreement constituted legally adequate consideration for the Agreement. We disagree.

First, Appellant contends that the benefit of her presence at the Church as first lady of the Church was adequate consideration to support a contract. However, nowhere in the limited record on appeal demonstrates that Appellees benefitted from her presence at the Church. Appellant did not take on any additional responsibilities with the Church nor promise to continue her activities with the Church. If Appellant chose to no longer attend the Church as a member, she would still be eligible for the benefits conferred to her pursuant to the terms of the Agreement. Accordingly, her mere presence at the Church does not constitute consideration.

Second, Appellant asserts that her loss of benefits previously received from the Church constituted legally adequate consideration. In order for this loss to constitute consideration, Appellant must have had a vested right to these benefits at the time of execution of the Agreement. The benefits Appellant asserts that she gave up as consideration for the Agreement were provided as a result of Reverend Cochran's employment contract with the Church (the "Employment Contract"). For Appellant to have a vested right to the benefits conferred to her, she must have been an intended beneficiary of the Employment Contract.

To establish that she is an intended beneficiary of the employment agreement between Reverend Cochran and the Church, Appellant "must establish (1) a valid contract made upon sufficient consideration between the principal parties and (2) the clear intent to have the contract operate for [her] benefit . . . ." *First Tenn. Bank Nat'l Ass'n v. Thoroughbred Motor Cars, Inc.*, 932 S.W.2d 928, 930 (Tenn. Ct. App. 1996) (citing *United Am. Bank of Memphis v. Gardner*, 706 S.W.2d 639, 641 (Tenn. Ct. App. 1985)). In order to establish an intent to benefit, Appellant must show "an expression in the contract that the contracting parties intended to benefit the third party . . . or proof that the promisor's performance would otherwise discharge a duty owed to a third party beneficiary by the promise . . . ." *Id.* (citing *Moore Constr. Co. v. Clarksville Dep't of Elec.*, 707 S.W.2d 1, 9 (Tenn. Ct. App. 1985) (citing Restatement (Second) of Contracts § 302 (1979))).

It is undisputed that the Employment Contract was valid. As an oral modification of the Employment Contract, Reverend Cochran and the Church agreed to provide Appellant certain amenities, such as cell phone services, beeper services, and gas and car maintenance services for Appellant's automobile. This modification shows that Reverend Cochran and the Church intended to directly confer benefits to Appellant pursuant to the Employment Contract. Thus, if Appellant still maintained her rights to these benefits at the time of the execution of the Agreement, this loss would constitute consideration for the Agreement.

"A contract for personal service is terminated by the death, insanity, sickness, or permanent disability of a servant, whereby he is unable to perform his contract, unless the parties contracted to the contrary." *Am. Nat'l Ins. Co. v. Jackson*, 12 Tenn. App. 305, 308-09 (1930) (citations omitted); *accord Jenkins Subway, Inc. v. Jenkins*, 990 S.W.2d 713, 720-21 (Tenn. Ct. App. 1998) (quoting

17A C.J.S. *Contracts* § 465, at 623 (1963)). As such, the agreement must provide "for its continuance after the death of one of the parties." ***Jenkins Subway, Inc.***, 990 S.W.2d at 721 (quoting 17A C.J.S. *Contracts* § 465, at 627-28 (1963)). "[W]hether a particular contract survives the death of one of the parties implicates questions of law because, in order to resolve this issue, the court must construe the parties' contract." ***Id.*** (citing *Edelen Transfer & Storage Co. v. Willis*, 66 S.W.2d 214, 216 (Tenn. Ct. App. 1932); *Rodgers v. S. Newspapers, Inc.*, 379 S.W.2d at 799).

Applying the foregoing principles, Appellant did not have a right to the benefits conferred to her pursuant to the Employment Contract. In her deposition, Appellant concedes that although Reverend Cochran asked several deacons of the Church to assist his wife in some way after his death if the Church were able, he did not condition his employment on such request. As such, there was no original provision or oral modification of the Employment Contract that would extend the life of the Employment Contract beyond the death of Reverend Cochran. Once the Employment Contract terminated, all vested rights within that contract expired. ***Farrell v. Third Nat'l Bank in Nashville***, 101 S.W.2d 158, 165 (Tenn. Ct. App. 1936) ("[I]f the beneficiary accepts the benefits of the contract, he takes subject to its validity as between the original parties thereto, and subject to the terms and conditions of the original contract." (quoting 4 Page on Contracts § 2393, at 4217, 4218)). Therefore, since Appellant had no rights to the benefits conferred to her, Appellant's subsequent relinquishment of those benefits cannot constitute consideration. ***See*** 17 C.J.S. *Contracts* § 90, at 559 (1999).

Finally, Appellant asserts that the provision in the Agreement restraining her from marrying constituted consideration for the Agreement. "While total restraints of marriage are void [generally] and partial restraints are valid only if reasonable, . . . [an] absolute restraint of marriage is valid if it is a limitation on the duration of ownership rather than a condition subsequent requiring a forfeiture upon marriage." ***Harbin v. Judd***, 340 S.W.2d 935, 937 (Tenn. Ct. App. 1960). "The distinction is therefore universally recognized that while a condition in absolute restraint of marriage is invalid, a limitation until marriage is good." ***Id.*** at 938 (quoting 35 Am. Jur. Marriage § 258).`

In this case, the provision restraining Appellant from marriage is an absolute restraint and not a limitation until marriage. Thus, this provision is void as a matter of public policy and cannot constitute consideration.

### B.    Promissory Estoppel

Appellant contends on appeal, as she did at trial, that even if the Agreement did not have legally adequate consideration, the Agreement should be upheld on a theory of promissory estoppel. We disagree.

Previously our supreme court has defined promissory estoppel as follows:

> "A promise which the promisor should reasonably expect to induce
> action or forbearance of a definite and substantial character on the

part of the promisee and which does not induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

*Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982) (quoting Restatement of Contracts § 90). While broad in its definition, the theory of promissory estoppel does have its limits. As our supreme court has previously noted,

> [d]etrimental action or forbearance by the promisee in reliance on a gratuitous promise, within limits constitutes a substitute for consideration, or a sufficient reason for enforcement of the promise without consideration. This doctrine is known as promissory estoppel. A promisor who induces substantial change of position by the promisee in reliance on the promise is estopped to deny its enforceability as lacking consideration. The reason for the doctrine is to avoid an unjust result, and its reason defines its limits. No injustice results in refusal to enforce a gratuitous promise where the loss suffered in reliance is negligible, nor where the promisee's action in reliance was unreasonable or unjustified by the promise. The limits of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonable in justifiable reliance on the promise as made.

*Id.* (citing L. Simpson, Law of Contracts § 61 (2d ed. 1965)). "However, a 'claim of promissory estoppel is not dependent upon the existence of an expressed contract between the parties.'" *Calabro v. Calabro*, 15 S.W.3d 873, 879 (Tenn. Ct. App. 1999) (quoting *Engenius Entm't, Inc. v. Herenton*, 971 S.W.2d 12, 19 (Tenn. Ct. App. 1997) (citations omitted)).

From our review of the record on appeal, we find that there are no disputed issues of material fact as to the promises of Appellees and Appellant's actions in response to the promises of Appellees. Viewing these facts in a light most favorable to Appellant, we conclude that Appellant has not demonstrated that she detrimentally relied on the promises of Appellees.

Appellant argues on appeal that she conducted her life in reliance on the benefit she received from the Church. However, in order for the theory of promissory estoppel to apply, Appellant must show that the promises made in the Agreement induced an action or forbearance by Appellant to her detriment in reliance on those promises after Appellees made those promises. Appellant has failed to demonstrate such detrimental reliance. The only act of forbearance or action taken since the execution of the Agreement on the part of Appellant in reliance on the promises made by Appellees in the Agreement was that Appellant declined a proposal of marriage in order to adhere to the

conditions of the Agreement.[2]  As we have stated earlier, this restraint of marriage is void as a matter of public policy.  Since this restraint cannot be adequate consideration for the Agreement, it is counterintuitive to allow this restraint to serve as a basis for upholding the Agreement on a theory of promissory estoppel.  Accordingly, the theory of promissory estoppel is inapplicable in this case.

## V.  CONCLUSION

For the reasons set forth herein, we affirm the decision of the chancery court granting summary judgment to Appellee.  Costs of this appeal are taxed to Appellant, Mrs. Annie B. Cochran, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

---

[2]Appellant also claims that she took out a loan in reliance on the Agreement.  However, Appellant took this loan out after the Church stopped making payments pursuant to the agreement.  However, as stated earlier, the theory of promissory estoppel is inapplicable where an individual acts unreasonably in reliance on a promise. *Alden*, 637 S.W.2d at 864.  A promisee does not act reasonably when he or she acts in reliance on a promise that has already been breached.