TELLA McCoy, Appellant, v. WILLIAM V. FLYNN et al., Appellees.

**ATTACHMENT:** Property Subject to—Property Under Administra-
1 tion. Property of a deceased in the possession of his duly quali-
fied administrators is not subject to attachment.

**CONTRACT:** Restraint of Marriage. A contract in unreasonable
2 restraint of marriage is against public policy and invalid.

PRINCIPLE APPLIED: The contract in question was alleged to have been in settlement of a breach of promise of marriage. The material part of the contract was: ''In case you (the woman) do not marry before July 1st, 1912, I (the man) will on that date pay to you if living, a farther sum of $5,000.'' Date of contract was June 17, 1909. Cause was ruled on demurrer. No reason appeared in the petition for making the stipulation in regard to marriage. No fact was pleaded which justified such restraint on the marriage of the woman. No benefit to the man appeared. *Held*, the restraint was unreasonable and contract was invalid.

NOTE: Being *res integra* the court reviews authorities and indicates in-a general way that the restraints on marriage which have received recognition include restraints against marrying (a) before 21 years of age without consent, (b) a person under a certain age, (c) in a certain degree of relationship, (d) into a certain family, (e) a second time, (f) a person belonging to a particular religious communion.

*Appeal from Polk District Court.*—HON. W. S. AYRES, Judge.

SATURDAY, MARCH 19, 1915.

ACTION upon a written contract signed by T. F. Flynn. After the action was commenced, Flynn died and his executors were substituted as defendants.

An amended petition was filed, stating grounds for attachment, and the Iowa Loan and Trust Company and Ida

May Flynn were made parties defendant. All the defendants demurred to the petitions and their demurrers were sustained. The appeal is from these rulings.—*Affirmed.*

*Dowell, McLennan & Groesbeck,* for appellant.

*R. L. Parrish,* for appellee.

Deemer, C. J.—The petition alleges that on or about the 17th day of June, 1909, plaintiff and the decedent, Flynn, who had theretofore been betrothed, because of Flynn's breach of agreement to marry the plaintiff entered into a written stipulation, the terms of which are as follows:

"My Dear Miss McCoy:

I will pay you the sum of five thousand ($5,000.00) dollars on or before June 18th, 1909. And upon receipt of same you will agree to relinquish all further or future claim on me of any kind whatever, except that there is a mutual understanding between us that in case you do not marry before July 1st, 1912, I will on that date pay to you, if living a further sum of five thousand ($5,000.00) dollars.

Your acceptance and agreement to this proposition to make its terms binding on each of us from and after date of its acceptance and each will abide by same.

Yours very truly,

T. J. Flynn.

Terms and conditions of above letter have been accepted by me this 17th day of June, 1909.

Tella McCoy.

It is averred that this was accepted in full and complete satisfaction and settlement of all demands and claims of the plaintiff against the said Flynn, occasioned by his breach of promise to marry the plaintiff; that the deceased paid the plaintiff the sum of $5,000.00 on or about the 17th day of June, 1909; but neglected to pay the $5,000.00, maturing

July 1, 1912. Plaintiff further averred that she did not marry before the date stated and that she is yet a single woman.

The grounds for attachment, as stated in the amendment to her petition, were that Flynn fraudulently conveyed to Ida May Flynn and to the Iowa Loan and Trust Company substantially all of his property, both real and personal, for the purpose of cheating and defrauding his creditors, and especially this plaintiff.

The demurrer to the original petition was bottomed upon the proposition that the contract upon which the suit is predicated is null and void and contrary to public policy, in that it amounted to a restraint upon marriage.

1. ATTACHMENT: property subject to: property under administration.

The demurrer to the petition for an attachment challenged the plaintiff's right to have such a writ, because of the death of the original defendant and the appointment of executors for his estate.

Little is said in argument regarding the correctness of the latter ruling, and it merits little or no attention.

At the time the petition for the attachment was filed, the property of the deceased Flynn was in the possession of his executors for the purpose of being administered under his will, and was not subject to attachment.

If plaintiff sometime recovers a judgment on her claim, and the executors fail and refuse to bring action to set aside the conveyances because in fraud of Flynn's creditors, plaintiff might have some remedy; but it would not be by attachment of the property of the deceased, after it had passed to his executors. No authority need be cited upon so plain a proposition. The other question is much more difficult of solution.

The payment of the second $5,000.00 was not to be made unless the plaintiff did not marry before July 1, 1912. The proposition was accepted by the plaintiff, and, so far as it is possible to make an agreement, it became mutually binding upon the parties thereto. In order to obtain the $5,000.00,

plaintiff was compelled to remain single for something more than three years, no matter how many favorable opportunities she might have for a desirable marriage.

It is hornbook law that contracts in restraint of marriage are illegal, and as a rule it makes no difference how long the restraint. Of course, there are many exceptions to this rule, some of which will be noticed during the course of the opinion. In some cases it is held that if the restraint be reasonable, it is not inimical to public policy; but there is nothing in the record showing any reason for the making of the stipulation, and no facts are pleaded which would justify any such limitation upon the plaintiff's right in morals or in law to take upon herself the relations of a wife, notwithstanding the breach of promise on the part of Flynn. No benefit or advantage to him is shown, but for reasons known only to him, he made his promise conditional on the fact that his former fiancee should not marry during the three years. The immediate tendency of this promise was to discourage marriage, and, as a rule, that tendency stamps such contracts as illegal. See: *Bostick v. Blades,* 59 Md. 231 (43 Am. Rep. 548) ; *Knost v. Knost,* 129 S. W. (Mo.) 665; *Arthur v. Cole,* 40 Am. Rep. (Md.) 409; *Conrad v. Williams,* 6 Hill (N. Y.) 444; *Waters v. Tazewell,* 9 Md. 291; *Maddox v. Maddox,* 11 Grat. (Va.) 804; *Hartley v. Rice,* 10 East. (Eng.) 22; *Sterling v. Sinnickson,* 5 N. J. Law 756. In the latter case, the suit was upon a contract which read as follows: "I, Seneca Sinnickson, am hereby bound to Benjamin Sterling for the sum of One Thousand Dollars, provided he is not lawfully married in the course of six months from date hereof." In speaking of the legality of the contract, the court said: "It has been spoken of, by the plaintiff, as if this were an obligation to pay money upon a future contingency, which any man has a right to make, either with, or without, consideration; and as if the not marrying of the plaintiff were not the consideration of the obligation, but the contingent event only upon

2. Contract: restraint of marriage.

which it became payable. But I think this is not a correct view of the case. Where the event upon which the obligation becomes payable is in the power of the obligee, and is to be brought about by his doing or not doing a certain thing, it cannot be so properly called a contingency; it is rather the condition meritorious, upon which the obligation is entered into, the moving consideration upon which the money is to be paid. It is not, therefore, to be considered as a mere contingency, but as a consideration, and it must be such consideration as the law regards; nor does it at all vary the case, that the restraint was for six months only. It was still a restraint, and the law has made no limitation as to the time. Neither can the plaintiff's performance on his part help him. It imposed no obligation upon the defendant; it was wholly useless to him; the contract itself was void from the beginning."

In the early case of *Lowe v. Peers* (1770) Wilmot 364 (4 Burr.-2225), Lord Mansfield declared:

Matrimony is "one of the first commands given by God to mankind after the creation, repeated again after the deluge, and ever since echoed by the voice of nature to all mankind." See also: *Hartley v. Rice,* 10 East. 22; *Baker v. White,* 2 Vern. 215; *Grace v. Webb,* 15 Sim. 384.

In Hartley's case, the restraint was for six years, and in Sterling's case, supra, for six months. In Grace's case, the court said: "It is most beneficial to a state to have a multitude of subjects; and, therefore, restraints on marriage are objectionable as being against public policy. A man may make a provision for his wife, and declare that it is considered that a husband has a sort of interest to preserve the viduity of his wife, for the sake of his children. But the grantor of the annuity in the present case could not have had any motive whatever for inserting the proviso in the deed, except that the larger annuity might operate as an inducement to Elizabeth Castle not to marry."

Many exceptions exist to rules above stated.

There is nothing contrary to public policy for a person having a parental interest in his offspring to restrict marriage along certain lines, as infancy, relationship, and good morals. And agreements not to marry a person under a certain age, or in a certain degree of relationship, or into a certain family, or not to marry a second time, have been held valid. *Hogan v. Curtin,* 88 N. Y. 162; *Siddons v. Cockrell,* 131 Ill. 653.

In *Hogan's* case, *supra,* it is said: "A condition prohibiting marriage before twenty-one without consent, is by the common law valid and lawful. It is otherwise of conditions in general restraint of marriage, they being regarded as contrary to public policy, and the common weal and good order of society. But the reasonable conditions designed to prevent hasty or imprudent marriages, and to subject a child, or other object of the testator's bounty, to the just restraint of parents or friends during infancy, or other reasonable period, are upheld by the common law, not only because they are proper in themselves, but because by upholding them the law protects the owner of property in disposing of it under such lawful limitations and conditions as he may prescribe. Story Eq. Jur., Sec. 280 *et seq.,* and cases cited. Now it is the general rule of law that a breach of a lawful condition annexed to a legacy, either divests it, or prevents an estate therein arising in the legatee, depending upon whether the condition is precedent or subsequent. In accordance with this general principle, it was held in *In re Dickson's Trust,* I Sim. (N. S.) 37, a condition subsequent, that the legatee should not become a nun, was valid, and that the legacy was forfeited by breach of the condition, although there was no gift over. But it has been settled law of England for a long period, that a condition subsequent annexed to a legacy, in qualified restraint of marriage, although the restraint was lawful and reasonable, nevertheless did not operate upon a breach to divest the title of a legatee, unless there

was an express gift over on breach of the condition, or a direction that the legacy should fall into the residue, and pass therewith, which is deemed equivalent to a gift over. The condition where there is no devise over, is said to be *in terrorem* merely, a convenient phrase adopted by judges to stand in place of a reason for refusing to give effect to a valid condition. . . .

"In *Lloyd v. Branton,* Sir William Grant, referring to the subject, says: 'Whatever diversity of opinion there may have been with respect to the necessity of a devise over in the case of conditions precedent, I apprehend that, without such a devise, a subsequent condition of forfeiture on marriage without consent has never been enforced.' It is not necessary to state at length the reason of the apparent anomaly in the law upon the subject. This is fully explained in the judgment of Lord Thurlow in *Scott v. Tyler,* 2 Bro. Ch. 432, and of Lord Loughborough, in *Stackpale v. Beaumont.* Suffice it to say, that it grew out of the adoption, by the English ecclesiastical courts and the courts of equity, of the rules of the civil and canon law, by which all conditions in restraint of marriage (with very limited exceptions), or conditions requiring consent, were held to be void. The ecclesiastical courts, having jurisdiction to enforce the payment of legacies, adopted the rule of the civil law in all cases, without considering that by the common law, reasonable conditions in restraint of marriage were valid. The distinction made in cases where there was an express devise over, does not seem to be founded upon any principle, and may possibly have grown out of an effort to partially restore the harmony of the law.

"It is a clear proposition, therefore, that, according to the settled law of England, the legacy in this case, if it is regarded as a purely personal legacy, was not forfeited by the marriage of the testator's daughter without consent. There was no devise over on breach of the condition. The only gift over was in the event of the daughter's dying unmarried before twenty-one. It has been frequently decided that a

general gift of a residue is not a gift over within the rule. *Wheeler v. Bingham, supra; Lloyd v. Branton, supra.* The condition therefore in this case would be *in terrorem* only within the cases cited.

"But the legacy is not a purely personal legacy. The testator charges the lands devised as an auxiliary fund for the payment of debts and legacies, and there is no personalty out of which the legacy can be paid. If it is paid therefore it can be only by a sale of the land on which the legacy is charged. This presents a case where the condition must be construed and effect given to it according to the general rule of the common law. *Reynish v. Martin* was the case of a legacy upon a condition in restraint of marriage without consent, charged upon land in aid of the personalty. The legatee married without consent, and afterward suit was brought to compel a sale of the land to pay the legacy, and Lord Hardwicke denied this relief, saying that 'where a legacy is a charge upon the lands, to be raised out of the real estate, as the ecclesiastical courts have no jurisdiction, it must be governed by the rules of another forum, to which the jurisdiction properly belongs;' and in *Scott v. Tyler*, Lord Thurlow said, 'Lands devised, charged upon it powers to be exercised over it, money legacies referring to such charges, money to be laid out in land (though I do not find this yet resolved), follow the rule of the common law and are to be executed by analogy to it.' And Judge Story, speaking of the distinctions between conditions in restraint of marriage, annexed to a bequest of personal estate, and the like, conditions annexed to a devise of real estate, or to a charge upon it, says: 'In the latter cases (touching real estate) the doctrine of the common law as to conditions is strictly applied. If the condition be precedent it must be strictly complied with in order to entitle the party to the benefit of the devise or gift. If the condition be subsequent, its validity will depend upon its being such as the law will allow to divest an estate.' Story Eq. Jur., Sec. 288." See also *Cornell v. Lovett*, 11 Casey

100; *Com. v. Stauffer,* 10 Penn. St. 350 (51 Am. Dec. 489);
Wms. Pers. Prop. (4th Ed.) 369, 370.

Quite analogous to these exceptions is another, relating
to the disposition of property by gift or will, where it is gen-
erally held that the donor or testator may impose such condi-
tions to his gift or devise as he may elect. Although even in
this case there are some refined exceptions to the exception.

This is most clearly stated by Pomeroy in his work on
Equity Jurisprudence, Vol. 2, Second Edition, Sec. 933:

"Intimately connected with contracts in restraint of mar-
riage, and depending upon the same principle, are conditions
and limitations operating in like manner annexed to or form-
ing part of testamentary dispositions, or of family settle-
ments, or similar gifts. Although the subject, in some of its
special applications and phases, is still more confused and
uncertain than perhaps any other branch of equity juris-
prudence, yet certain general rules have been established
beyond all further controversy. Two propositions lie at the
foundation, and are recognized by all the authorities:

"1. It is ordinarily said that all conditions annexed to
gifts which prohibit marriage generally and absolutely are
void and inoperative. This, however, is a very inaccurate
mode of statement, since a condition precedent annexed to a
devise of land, even if in complete restraint, will, if broken,
be operative and prevent the devise from taking effect. With
this limitation all conditions in general restraint are void.
Also if a condition is not in absolute restraint, but is of such
form that it will probably operate as a general prohibition,
it is, under the same limitation, void.

"2. On the other hand, conditions annexed to testament-
ary or other gifts, in partial and reasonable restraint of mar-
riage, are valid and operative; such, for example, as that
a devisee or legatee should not marry under age, or should
not marry without the consent of parents, guardians, or trus-
tees, or should not marry a particular person, or a person

belonging to a particular religious communion. In the application of these two propositions, certain special rules have been settled with more or less certainty, depending upon the facts of the condition being precedent or subsequent, of there being, or not, a gift over upon its breach, and of the original gift to which the condition is annexed being one of real or of personal estate. The system which has been developed is a partial compromise between the technical common-law rules concerning conditions, and the doctrines of the Roman law, which made void all attempts to restrict the perfect freedom of marriage; and, like most compromises, it has some incongruous features. If a condition is precedent and annexed to a gift of land, it operates as at the common law; when broken, it prevents the estate from vesting, whatever be its nature; when annexed to a gift of personal property, if general or unreasonable, it is wholly void, and the gift takes effect, if partial and reasonable, it is operative. When a condition is subsequent and annexed to a gift of land, if general, it is void, and although broken, the estate of the donee continues; if partial and reasonable, it is operative, and on its breach the estate of the donee is defeated. When a subsequent condition is annexed to a gift of personal property, if general, it is void; if partial and reasonable, and there is a gift over, it is operative, and upon its breach the interest of the first donee ceases, and the gift over takes effect; but if there is no gift over, then the condition is said to be *in terrorem* merely, and is inoperative. It seems to be settled by an overwhelming weight of authority that limitations and conditions, precedent or subsequent, tending to restrain the second marriage of women are valid, and by the most recent decisions the same rule has been applied to the second marriages of men. Where a partial and reasonable condition has been imposed, requiring the consent of certain persons to the marriage of a donee, courts of equity are very liberal in construing the provision so that the gift shall not be defeated by a mere formal omission."

The text is fortified by innumerable citations in support thereof and it may be taken as announcing the voice of authority. That contracts in restraint of a second marriage are valid, is everywhere affirmed. *Appleby v. Appleby,* 111 N. W. (Minn.) 305 (10 L. R. A. (N. S.) 590, 10 Ann. Cases, 563). The reason for this exception is:

"The reason for the rule as to first marriage has no substantial force when applied to a second marriage. Neither the conservation of morals nor public policy furnish a basis for the rule as applied to the right of a husband or wife to withhold his or her estate from passing to the support of a second husband or second wife, as the case might be; and the authorities declare that the rule has never been extended to second marriages. The precise question arose in *Allen v. Jackson,* referred to above, and the court distinctly held that the rule did not apply to a second marriage. The question was fully considered in *Bostick v. Blades,* 59 Md. 231, 43 Am. Rep. 548, a case involving a devise by the wife of certain property to the husband, so long as he should remain unmarried after her death. The court held the will valid on the ground that the rule referred to did not extend to second marriages. The court also considered at some length whether the rule should be limited to the second marriage of the wife, or whether it included both husband and wife. Upon that subject, the court said: 'In the absence of any binding authority to the contrary, we are of opinion that there is no good and substantial ground for maintaining a distinction between a condition imposed in restraint of a second marriage of a woman and a like condition in restraint of a second marriage of a man. As the one is valid and effectual, so is the other.'

"In *Knight v. Mahoney, supra,* the testator gave his property to his wife, 'so long as she remains my widow.' She married again after her husband's death, and the controversy arose whether the provisions of the will were valid. The

court said that the weight of authority sustained devises and bequests conditioned to terminate upon second marriage, citing, in support of the decision, 2 Pom. Eq. Jur. 933; *White v. Sawyer,* 13 Metc. 546; *Loring v. Loring,* 100 Mass. 340; *Gibbens v. Gibbens,* 140 Mass. 102 (54 Am. Rep. 453; 3 N. E. 1), and some of the cases heretofore referred to.

"It is unnecessary to discuss the reasons for the rule. The welfare of children by the first marriage is an element entering into consideration in determining the validity of such limitations, as well as the right of persons freely to enter into the marriage relation as their station in life and inclinations may justify and prompt. But no sound principle, founded upon either moral or legal obligation, extends the right of either husband or wife to retain the property of the other, in the face of lawful restrictions to the contrary, for the purpose of supporting and maintaining another spouse. The fact that appellant had no children by this marriage does not, as a matter of law, relate back and render the restrictions or limitations of the antenuptial contract unreasonable."

Again, in all these cases, a distinction has been preserved between conditions precedent, limitations and conditions subsequent, the latter of which are disregarded. See cases cited in note to *In re Estate of Fitzgerald deceased v. Fitzgerald,* 49 L. R. A. (N. S.) 615.

We have never before had the questions here involved for decision and the authorities generally are not in entire harmony. We have endeavored to state the rules and exceptions generally recognized in this country and in England, and, in applying them to this case, we are constrained to hold that the contract in question is in restraint of marriage, and that it does not fall within any of the exceptions noted.

Of course, plaintiff's action for breach of promise of marriage still remains, unless barred by the statute of limitations; but she cannot have recovery upon the agreement, for that is contrary to public policy. This was the conclu-

sion of the trial court, and it follows that its judgment must be and it is *Affirmed.*

LADD, GAYNOR and SALINGER, JJ., concur.