CLYDE FAIRGRAVE, Executor, Appellee, v. ILLINOIS BANKERS LIFE ASSOCIATION OF MONMOUTH, ILLINOIS, Appellant.

No. 40373.

DECEMBER 9, 1930.

*Henry & Henry,* for appellant.

*Bradshaw, Schenk & Fowler* and *D. J. Fairgrave,* for appellee.

DE GRAFF, J.—This action was tried to the lower court (a jury having been waived by the parties) largely on a stipulation of facts, including the following: That appellant association issued its certificate of membership to the deceased, Maria Fairgrave, under date of November 3, 1910, which certificate, by its terms, made the by-laws of the association a part thereof. (Copies of the certificate and the by-laws material to the action were introduced in evidence.) That the calls or premiums on such certificate were payable quarterly, and pursuant to notice sent out by said association. That each and every premium called for on such certificate, up to and including July 1, 1926, had been duly paid to the association. That, on or about September 1, 1926, a quarterly premium or call was legally made by the appellant on the certificate held by the said Maria Fairgrave, and that the notice thereof was duly mailed to her at her last post-office address known to appellant association. That such premium call was due October 1, 1926, and was not paid by the insured nor by anyone in her behalf, and that no tender of any such premium call on such certificate had ever been made to the appellant. That, on or about September 5, 1925, said Maria Fairgrave suffered a stroke of paralysis, and thereupon became totally and permanently disabled. That the first notice of such disability was had by appellant association on or about July 15, 1927, through a letter written by the daughter of the insured, and that a second notice was received from the legal guardian of said Maria Fairgrave on or about September 19, 1927, both letters being introduced on the trial. That appellant

association received no further proofs of total and permanent disability, and that no demand for blanks upon which to make such proofs was made upon appellant. That appellant wrote a letter, dated October 18, 1927, refusing to honor any claim under said certificate. That the action was commenced on April 18, 1929. That the exhibits referred to in such stipulation might be introduced in evidence.

The appellee's evidence, in addition to the stipulations and exhibits referred to therein, consisted of the testimony of two witnesses. The appellant, as defendant, offered no evidence except the stipulations and the exhibits referred to therein, making, however, an objection to the declaration contained in Exhibit 3 as incompetent and hearsay, and not binding upon appellant.

I. It appears conclusively from the testimony, which was not contradicted by appellant, that Maria Fairgrave, the insured, suffered a paralytic stroke on September 5, 1925, which rendered her totally and permanently disabled, within the meaning of the provisions of the certificate issued to her, and which also resulted in said insured's becoming mentally incompetent soon thereafter. After being so stricken, she was taken to the home of her daughter, Mrs. Thompson, where she remained until the month of April, 1926, when she was taken to the home of another daughter, where she remained until the month of November, 1927, whence she was removed to Mrs. Thompson's home, in Valley Junction, Iowa, where she remained until her death, in September, 1928. It appears that the deceased continued to be totally and permanently disabled and mentally incompetent until her death. Mrs. Thompson testified that she paid the premium calls upon her mother's certificate in the appellant association until in October, 1926. No question has been raised as to the lapsing of said certificate by reason of the nonpayment of the October, 1926, premium call, and no claim is here being made for any death benefit under such certificate. The certificate of membership provided:

"If the member be permanently and totally disabled, one half of this certificate shall be paid on due proof thereof, and the remainder shall be paid at death. Upon the failure of the above-named member to pay the calls levied within the time allowed by the by-laws of the association * * * said membership shall be forfeited and all rights to any share or interest in the guarantee

fund or other property of the association shall cease absolutely at the expiration of the time stipulated in which such payments are required to be made. The benefit under this contract to be paid to John Fairgrave, husband, Lucian Godwin, Anna Reid, Gennette McAvoy, Maria Aggie, Clyde and Rose Fairgrave, children, upon satisfactory proof of death to be supplied by the beneficiary and the surrender of this certificate properly receipted.''

There is sufficient evidence to sustain the finding that Maria Fairgrave did become totally and permanently disabled, within the meaning of the certificate. It will be noticed that, if such a condition arose, ''one half of this certificate shall be paid on due proof thereof and the remainder shall be paid at death.'' No claim has been made in this action for the death benefit. The ''one half'' involved here was to be paid upon due proof that the condition insured against,—to wit, became permanently and totally disabled,—had occurred while the certificate was in full force and effect.

It is presumed, in the absence of anything to the contrary, that the total and permanent disability benefit was payable to the insured upon due proof thereof, in accordance with the provisions. It is to be observed that, in event of nonpayment of premium calls within the time provided, the membership was to be forfeited, and all rights to share in the funds and property of the association ceased absolutely.

II. The by-laws of the appellant association, which were made a part of the certificate of membership issued to the deceased, and which have not been attacked by appellee as invalid in any way, provide, *inter alia*:

''In the event of any certificate of membership or policy of insurance issued by this association becoming a claim against the association by reason of the death or total and permanent disability of any member or policyholder satisfactory proofs shall be furnished upon blanks provided by the association within ninety (90) days after the death of said member or policyholder, or the happening of the total and permanent disability as provided in said certificate or policy of insurance, or claim on account of the death or total and permanent disability of any certificate or policyholder or beneficiary thereof shall be forfeited

by failure to furnish the proofs within the time and in the manner above provided.''

It is conceded by the parties that no proofs of the total and permanent disability of Maria Fairgrave were furnished the association within 90 days of the commencement of such disability, or at any other time, and furthermore, that the first notice of such disability was given the association in a letter written under date of July 15, 1927, by one of the beneficiaries named in the certificate. The letter reads:

"Valley Junction, Iowa,
"July 15, 1927.

"Illinois Bankers Life Association,
"Monmouth, Illinois.
"Dear Sirs:

"On September 1, 1925, my mother (Mrs. John Fairgrave) was permanently disabled by a paralytic stroke. She paid her premiums for a year afterward then without telling any of us so we could help her she ceased paying for lack of funds. In reading over her policy I find there is a permanent disability clause which she did not know was there. Is she not entitled to some consideration?

"I am,

"Yours respectfully,
"Gennette McAvoy (daughter)
"528 7th St.,
"Valley Junction, Iowa.''

As said in *Hatch v. United States Cas. Co.*, 197 Mass. 101 (83 N. E. 398):

"* * * we are not dealing with a case where it was impossible to give a notice, as where death is contemporaneous with the accident and the fact of death is not known nor can be known until more than ten days after the accident.''

In the case at bar, the disability became manifest soon after the paralytic stroke, on September 5, 1925, and it would appear that ample time was given by the 90-day provision in the by-laws to determine the fact and to notify the association thereof. Sufficient interest was shown by some of the beneficiaries to pay the premium calls upon Mrs. Fairgrave's certificate for over a year

after September 5, 1925, and it certainly was of equal importance that the other provisions of the contract, especially those pertaining to the furnishing of proofs of total and permanent disability, should be given attention. The furnishing of proofs within a limited time is certainly of the procedure to enforce the terms of the contract, and is by statute, independent of policy, a condition precedent to the maintenance of an action. *Washburn-Halligan Coffee Co. v. Merchants' Brick Mut. Fire Ins. Co.*, 110 Iowa 423. As a condition precedent, it was incumbent upon the plaintiff or the beneficiaries, in the absence of a waiver of such proofs, to prove that the disability had occurred, and within 90 days of the commencement thereof. It is expressly stated in the certificate that the one half of the certificate shall be paid on *due proof* of the total and permanent disability, and the by-laws clearly state:

"Satisfactory proofs shall be furnished upon blanks provided by the association within ninety days after the happening of the total and permanent disability or the claim on account of total and permanent disability shall be forfeited by failure to furnish the proofs within the time and in the manner above provided."

Such was the "due proof." If the parties have, by the terms of their agreement, fixed the consequences of a forfeiture on the violation of it, this becomes the law of their contract, and by it they are to be governed.

As the limit in which proofs of loss were to be furnished in the case at bar was 90 days, when, as a matter of law; such limit could be fixed at 60 days, no valid complaint can be made as to the insufficiency of the time allowed by the certificate.

Appellee, however, contends that, by reason of a denial of liability in a letter written by the appellant association on October  18, 1927, the appellant waived the necessity, if any there was, of the right to require satisfactory proofs of the total and permanent disability, as provided in Article XI of the by-laws. The letter referred to reads as follows:

"Monmouth, Illinois,
"October 18, 1927.

"Valley Junction Savings Bank,
"Valley Junction, Iowa.
"Gentlemen:        In re Policy No. 14592—Maria Fairgrave.

"Replying to your letter of October 4th with respect to the above policy, we regret to advise that this policy was allowed to lapse by reason of the failure of the insured to pay the premium due October 1, 1926. I observe from the letter of her daughter that Mrs. Fairgrave became disabled in September 1925 and continued to pay her premiums for about a year after that time. I regret to advise that the law seems to be that in such circumstances the policy became void and it is impossible for us to honor a claim under the policy. I will take the liberty of citing to you some of the cases covering the law under such circumstances. They are as follows: Hipp vs. Fidelity Mutual, 57 S. E. 892, and the notes found in 12 L. R. A. (N. S. 1908) p. 319; Wick vs. Western Union, 175 Pac. 953; Brotherhood vs. Dee, 111 S. W. 396; New York Life vs. Alexander, 85 So. 93.

"Very truly yours,
"Illinois Bankers Life Assn.
"By Robert M. Work, Secretary."

At the date of the above letter Mrs. Fairgrave was alive, but had been totally disabled for two years. The claim was being made by her legal guardian for the disability benefit. May it be said that this letter aforesaid contained such a denial of liability as would constitute a waiver of the furnishing of proofs of disability which, by the specific provisions of the contract, were to be furnished within 90 days of September 5, 1925, or soon thereafter, when it became certain that the total and permanent disability of Mrs. Fairgrave was established? In the many cases we have examined, it appears that a waiver of proofs occurred by reason of denial of liability on other grounds than the furnishing of proofs within the time specified in the contract, and that the validity of the policy itself at the time at which the loss occurred, and for which the proofs were so waived, was in question. In other words, the denial of liability was based upon the invalidity of the contract at the time the loss claimed for occurred. The case before us presents an entirely different question. Here the policy was in full force and effect at the time the claim arose,

and the validity of the claim was predicated upon the furnishing of proofs within the specified time. The denial of liability in this case was made about one year after the certificate had admittedly lapsed, and about 23 months after the commencement of the disability for which proofs were to be made within 90 days thereof. It was said in *Smith v. American Nat. Ins. Co.*, 111 Ark. 32 (162 S. W. 772), that an unqualified denial of liability before the expiration of the time for making proof of loss operates as a waiver, but not so where the time for making proof of loss had already expired. See, also, *Illinois Bankers' Life Assn. v. Byassee*, 169 Ark. 230 (275 S. W. 519). The letter plainly states that "it is impossible for us to honor a claim under the policy," and it must be inferred that the reason assigned was "that the law seems to be that in such circumstances the policy became void," and that the term "such circumstances" meant (1) that the certificate had lapsed; (2) that Mrs. Fairgrave became disabled in September, 1925; and (3) that she continued to pay her premiums for about a year after that time. In each circumstance the writer was stating facts which none deny. By so denying liability, can it be said that the association waived its right to refuse payment of the disability benefit because of nonconformance with the express provisions of the contract upon which such disability benefit became payable,—to wit, the furnishing of proofs within 90 days after the commencement? We cannot go that far, and deprive the association of a right which had accrued to it under the laws of this state. However hard and cold-blooded the instant decision may seem, with respect to the terms and provisions of the insurance contract, we are committed to the doctrine that, while the laws of the state of Iowa permit parties to make contracts in plain and unmistakable language, this court may not change that language and read into the contract other terms, which were not agreed upon at the time of the making of such contract. We are not unmindful of the rule stated in *Bloom v. State Ins. Co.*, 94 Iowa 359, but in this instance the refusal to honor a claim was not such as would bring it within the rule announced there.

Other questions are raised in this case, but, in view of the holding with respect to the nonperformance of the provisions of the certificate requiring proof of loss to be furnished within the fixed time, such questions need not be determined at this time.

.The judgment rendered in the lower court must be and is—
*Reversed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.