*In re* MARRIAGE OF GEORGEANN DODGE, Petitioner-Appellee, and JOHN DODGE, Respondent-Appellant.

Second District   No. 2—86—0094

Opinion filed December 15, 1986.

H. Joseph Gitlin, of Gitlin & Burns, of Woodstock, for appellant.

W. Randal Baudin, of Madsen, Baudin & Briscoe, of Crystal Lake, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

This appeal by respondent, John Dodge, arises from orders entered in post-dissolution of marriage proceedings instituted by petitioner, Georgeann Dodge, n/k/a Georgeann Sanders, which set child support at $150 per week, found that respondent owed petitioner $5,934.07 for real estate taxes after declaring that the parties' agreement to release respondent from this obligation was against public policy as it placed a restraint upon the remarriage of petitioner, and awarded petitioner partial attorney fees of $2,297.80 to be paid by respondent.

The judgment of dissolution of marriage entered March 3, 1980, dissolved the marriage of the parties, awarded custody of the three minor children of the parties to petitioner, and incorporated a marital settlement agreement. The agreement provided, in pertinent part, that respondent would pay petitioner $600-per-month child support to

be adjusted automatically January 1 of each year based on the consumer price index, that respondent would purchase a $20,000 certificate of deposit to insure that petitioner would have the necessary funds to pay the mortgage on the marital home, held as part of a joint-venture agreement between the parties, that respondent would pay the real estate taxes on the property until the youngest child, Jennifer, reached her 18th birthday, and that, if the home should be sold, petitioner would use the proceeds from the sale for the maintenance and education of the three children.

On October 24, 1984, petitioner filed a motion for a determination of child-support arrearages based on the provision in the agreement that support be adjusted automatically based on the consumer price index, stating that such arrearages totalled $2,864.19. She also requested her attorney fees incurred in presenting this motion. Respondent filed motions November 8, 1984, requesting that petitioner's motion for child-support arrearages be dismissed and that child support be allocated as to each child of the parties. On March 12, 1985, petitioner filed a motion for rule to show cause why respondent should not be held in contempt for failure to pay the real estate taxes on the marital home for 1981 to the present in accordance with the terms of the original judgment. She also requested attorney fees.

Respondent filed an answer to the rule to show cause on April 2, 1985, stating, as an affirmative defense, that the parties had entered into a "stipulation" on November 30, 1981, that respondent would be relieved of his obligation to pay the taxes upon petitioner's remarriage, and that petitioner had remarried on February 18, 1982. Respondent also stated that he inadvertently paid petitioner $2,000 during the property settlement and that this should be considered as payment for the 1981 real estate taxes. A copy of the agreement was not attached to his answer, but was filed on June 14, 1985, with respondent's motion to enter an order in accordance with the agreement. The agreement is dated November 30, 1981, signed by both parties, notarized, and states:

"It is agreed between JOHN DODGE and GEORGEANN DODGE, formerly husband and wife and now divorced, that if Georgeann Dodge ever marries, then John Dodge will be released from his obligation to pay taxes on the real property located at 3406 N. Oakdale, McHenry, Illinois."

Respondent also filed an answer to the motion for child-support arrearages on May 16, 1985, stating that he had been paying $150 per week since the entry of the judgment of dissolution of marriage, resulting in a total excess payment of over $2,650.

On May 23, 1985, after only hearing the arguments of counsel on the alleged child-support arrearage, the court ordered that, based on the increase in the consumer price index, respondent should be paying $733.98 per month as child support to begin in June 1985. Judgment was also entered for petitioner in the amount of $804.84, the amount determined to be the total arrearage through May 1985 based on cost of living increases and offset by respondent's excess payments of $150 per week instead of $600 per month. The other pending issues were continued.

Petitioner filed a "response to affirmative defense" on May 31, 1985, alleging that the purported "stipulation" regarding real estate taxes is of no legal force and effect as it was executed without consideration, was never delivered by petitioner to respondent, was executed at a time when petitioner was under severe emotional distress and duress, and was executed by use of coercion over petitioner. She also filed a motion for an increase in child support based on an increase in respondent's income and the increased costs and needs of the minor children. Respondent filed a counterpetition on June 10, 1985, requesting a decrease in child support because the oldest child had become emancipated by entering the armed forces on June 5, 1985, and another child was residing with his grandparents in Kentucky.

Another petition for rule to show cause was filed by petitioner on August 22, 1985, alleging that respondent was still paying $150-per-week child support and not the $733.98 per month as ordered on May 23, 1985, which resulted in an arrearage of $368.44, and requesting attorney fees. An amended petition was later filed which also alleged that respondent had contumaciously failed to pay the $804.84 arrearage he was ordered to pay May 23, 1985. Respondent filed a response October 4, 1985, stating that his failure to pay the judgment was not contumacious, but that he was waiting for the conclusion of all matters before the court.

A hearing was held on the various motions. We shall set forth only the evidence pertinent to the issues raised on appeal as we resolve those questions hereinafter. Following the hearing, the trial judge filed a memorandum determining the various issues before her, and subsequently filed an order which, in pertinent part, found that the November 30, 1981, agreement relieving respondent of his obligation to pay the real estate taxes on the former marital home upon the marriage of petitioner was void as against public policy because it placed a restraint upon her remarriage, granted respondent's motion to decrease child support and set support at $150 per week retroac-

tive to the date of the emancipation of the parties' oldest son, and awarded petitioner her attorney fees concerning the matters of the agreement regarding respondent's obligation to pay the real estate taxes and the petition for adjustment of the cost of living index applicable to child support. The award of attorney fees was specifically based upon her inability to pay these fees and respondent's ability to pay the fees.

Respondent maintains that the agreement of the parties which stated that he was released from his obligation to pay the real estate taxes if petitioner married is not violative of public policy in Illinois and that the trial court's determination that respondent owed petitioner for those taxes should be reversed. Respondent states that he agrees that a total restraint on remarriage, with limited exception, is void as contravening public policy. He contends, however, that the agreement here was a forfeiture upon remarriage, which is valid and not prohibited by the policy underlying the Illinois Marriage and Dissolution of Marriage Act, citing cases which state that parties may agree between themselves to alter their obligations under an original agreement.

■ It is a broadly stated general rule of law that provisions in contracts, deeds and wills that are in total or general restraint of marriage are contrary to public policy and void. (52 Am. Jur. 2d *Marriage* sec. 172 (1970).) This rule was recognized in Illinois in *Shackelford v. Hall* (1857), 19 Ill. 212, which, while determining that a will provision which provided for a forfeiture if any of the testator's children married before the age of 21 was not an invalid restraint on marriage, stated that a testator could impose reasonable and prudent restraints upon the marriage of the objects of his bounty, but could not, with one single exception, impose perpetual celibacy. (19 Ill. 212, 214.) The exception was noted and applied in *Glass v. Johnson* (1921), 297 Ill. 149, 130 N.E. 473, which held that a testator may rightfully impose a condition of forfeiture upon his wife's subsequent marriage. (297 Ill. 149, 152, 130 N.E.2d 473.) Also, in *Fletcher v. Osborn* (1917), 282 Ill. 143, 118 N.E. 446, an oral agreement between cousins where one cousin agreed to stay and work for his cousin and was promised that he would inherit all of his cousin's property also contained a provision that the cousin would remain unmarried during his period of service. This provision was found not to render the contract void as against public policy because the provision was merely an incident to the main object of the contract, and the parties did not contract expressly for a restraint upon the cousin's marriage. 282 Ill. 143, 156-57, 118 N.E. 446.

The rule that general restraints against marriage are void has a major exception, apparently as old as the rule itself, to the effect that in the absence of statute, the rule does not apply to a second or subsequent marriage. (52 Am. Jur. 2d *Marriage* sec. 176 (1970).) However, the case relied on by the trial court, *Shackleton v. Food Machinery & Chemical Corp.* (7th Cir. 1960), 279 F.2d 919, held that, based on Illinois law, a provision to pay royalties to plaintiff "provided she shall not have theretofore remarried" was void as against public policy, quoting *dicta* in *Shackelford* which it stated firmly established that Illinois is committed to the rule that total restraint on marriage imposed as a condition subsequent is void as contravening the public policy of Illinois. (279 F.2d 919, 921.) The court further stated "that in cases where spouses are not involved the rule in regard to restraint upon remarriage should not vary from that applicable to the case of marriage." (279 F.2d 919, 922.) A well-reasoned dissent in the case by Justice Duffy pointed out that there was no controlling authority by an Illinois court on the issue and the great weight of authority from other jurisdictions is that the rule does not apply to contracts in restraint of a second marriage. 279 F.2d 919, 923.

No recent Illinois cases have addressed this issue. Cases in other jurisdictions, however, have held that restraints against second marriages are not invalid. (*Cowan v. Cowan* (1956), 247 Iowa 729, 731-32, 75 N.W.2d 920, 921-22; *Young v. Kraeling* (N.Y. Sup. Ct. 1954), 134 N.Y.S.2d 109, 113; *Saslow v. Saslow* (1957), 104 Ohio App. 157, 163, 147 N.E.2d 262, 267; *Berry v. Cooley* (1940), 188 Okla. 426, 429, 109 P.2d 1081, 1085.) It has also been recognized that provisions in contracts restraining marriage are void only if such restraints are unreasonable having regard to the relation of the parties and the object of the contract (*Harbin v. Judd* (1960), 47 Tenn. App. 604, 613-14, 340 S.W.2d 935, 939), and that such contracts must be construed as a whole to ascertain the real intent of the parties.

*Cowan v. Cowan* (1956), 247 Iowa 729, 731-32, 75 N.W.2d 920, 921-22, involved a factual situation similar to the one here. In that case, the parties entered into a "collateral agreement" on the same date as their settlement agreement, which had been incorporated into their divorce decree. The collateral agreement was not filed in the court records or made part of the divorce decree and stated, in paragraph three, that if either party remarried prior to the time their youngest child reached 21, that party would be indebted to the other in the sum of $10,000. It appears that this paragraph of the agreement was included because the former wife did not want her former spouse to marry a woman she disapproved of so long as her sons

were living in his home. The court determined that it was an enforceable agreement and not void, noting that such agreements should be upheld if they are not general and unlimited and if they serve a reasonable purpose. 247 Iowa 729, 735, 75 N.W.2d 920, 923.

Here, the parties' agreement was not a total restraint on remarriage, and only resulted in a forfeiture by petitioner if she remarried prior to the parties' youngest child reaching 18, when respondent's obligation to pay real estate taxes would end. The restraint was not unreasonable, and the intent of respondent in the agreement was not to restrain petitioner from remarrying, but was to release respondent from his obligation to pay real estate taxes on a home in which petitioner was residing. Voluntary agreements are to be honored unless they are clearly contrary to a policy declared by the constitution, the legislature or court decisions, or unless they are manifestly injurious to the public welfare. (*Roanoke Agency, Inc. v. Edgar* (1984), 101 Ill. 2d 315, 327, 461 N.E.2d 1365.) To be deemed illegal, a contract must expressly contravene a law or a known public policy. (*Coronet Insurance Co. v. Ferrill* (1985), 134 Ill. App. 3d 483, 485, 481 N.E.2d 43.) There is no clear contravention of public policy here. We observe that the Illinois Marriage and Dissolution of Marriage Act specifically provides for the forfeiture of maintenance upon the recipient's remarriage (Ill. Rev. Stat. 1985, ch. 40, par. 510(b)), indicating that forfeiture of a benefit upon remarriage is not contrary to the public policy of this State. We need not reexamine whether the general rule against provisions in contracts, deeds and wills which place a general restraint on marriage has continued vitality in Illinois. We do hold that the provision at issue here is not void as against public policy and the ruling of the trial judge was erroneous.

Petitioner argues, however, that the agreement should not be given effect as it was not properly before the trial court. She contends that the agreement was not attached to respondent's answer as required by section 2—606 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—606) and was never admitted into evidence during the hearings. There is no merit to this contention. While the written agreement was not attached to respondent's answer to the petition requesting payment of the real estate taxes, it was filed later and admitted into evidence without objection during the hearings, although not marked as an exhibit. Respondent also testified regarding a part of the conversation which led to the signing of the agreement.

Petitioner next contends that the agreement was of no legal force and effect because it was without consideration. Respondent argues that this cannot be raised by petitioner because of her failure

to cross-appeal the court's finding that consideration was not necessary. It was unnecessary, however, for petitioner to file a cross-appeal. A judgment may be sustained upon any ground warranted, regardless of whether it was relied on by the trial court and regardless of whether the reason given by the trial court was correct. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9.) Respondent also contends, without case authority, that it is axiomatic that a stipulation does not require consideration. Although respondent refers to the agreement throughout the proceedings as a "stipulation," a "stipulation" is an agreement between parties or their attorneys with respect to business before the court. (*Village of Schaumburg v. Franberg* (1981), 99 Ill. App. 3d 1, 4, 424 N.E.2d 1239.) The writing involved here is a written agreement signed while no court proceeding was pending and is clearly not a stipulation.

■ The issue that the agreement was executed without consideration was first raised in petitioner's response to respondent's answer to the rule to show cause by respondent's failure to pay the real estate taxes. However, in a pretrial ruling the trial court found that consideration for this agreement was unnecessary, thereby necessarily precluding the parties from introducing evidence on this question. Thus, while we reverse part of the judgment below which held the agreement void as against public policy, we remand for the limited purpose of determining whether there was consideration for the agreement. Upon remand, because respondent raised the agreement as a defense and the agreement does not recite any consideration, respondent under these circumstances must show consideration for the agreement.

■ Respondent's next contention on appeal is that the trial court erred in awarding attorney fees to petitioner because there was no statutory authority for the award. He argues that the court below specifically awarded attorney fees based upon petitioner's financial inability to pay and respondent's ability to pay pursuant to section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (Act). (Ill. Rev. Stat. 1985, ch. 40, par. 508(a).) Citing *In re Marriage of Peterson* (1985), 139 Ill. App. 3d 391, 487 N.E.2d 679, respondent maintains that attorney fees in connection with the enforcement of a provision for child support can only be awarded under section 508(b) of the Act where the court finds that the failure to pay child support "was without cause or justification."

In the proceedings below, there were several petitions or motions for relief filed by petitioner. The trial judge's order, in pertinent part,

specifically awarded her attorney fees concerning only the issue of the agreement to release respondent from his obligation to pay the real estate taxes, and for attorney fees "concerning the time spent preparing the Petition for Adjustment of the Cost of Living index applicable to the child support and responding to Defendant's [respondent] Memorandum of Law for the Court." Petitioner argues that the fees awarded were not granted by the court for an enforcement of child support and, thus, the decision in *Peterson* is inapplicable.

Section 508 provides for an award of attorney fees as follows:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with the following:

(1) The maintenance or defense of any proceeding under this Act.

(2) The enforcement or modification of any order or judgment under this Act other than the enforcement of a provision for child support.

(3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders.

(4) The maintenance or defense of a petition brought under Section 2—1401 of the Code of Civil Procedure seeking relief from a final order or judgment under this Act.

(5) The costs and legal services of an attorney rendered in preparation of the commencement of the proceeding brought under this Act.

(b) In every proceeding for the enforcement of an order or judgment for child support in which relief is granted to the parent having custody of the child and the court finds that the failure to pay child support was without cause or justification, the court shall order the party against whom the proceeding is brought to pay the custodial parent's costs and reasonable attorney's fees.

(c) The court may order that the award of attorney's fees and costs hereunder shall be paid directly to the attorney, who may enforce such order in his name, or that they be paid to the relevant party. Judgment may be entered and enforcement thereof had accordingly." (Ill. Rev. Stat. 1985, ch. 40, par. 508.)

In *Peterson* the court held that, reading sections 508(a)(2) and 508(b) together, there is no provision for a discretionary award of fees where the court finds that a failure to pay child support is justifiable. (*In re Marriage of Peterson* (1985), 139 Ill. App. 3d 391, 393, 487 N.E.2d 679.) Thus, in an action for the enforcement of a provision for child support, an award of attorney fees is mandatory upon the court finding that the failure to pay child support was without cause or justification. However, under the reasoning in *Peterson*, if no such finding is made by the trial court, there can be no discretionary award of fees under section 508(a).

We need not consider the correctness of the analysis of the *Peterson* decision for we do not believe that the proceedings below for which fees were awarded can be properly characterized as seeking the enforcement of a provision for child support pursuant to the provisions in sections 508(a)(2) and 508(b). Petitioner's motion for a rule to show cause why respondent should not be held in contempt for failure to pay the real estate taxes according to the terms of the original judgment is not an action relating to a child-support order. The provision relating to respondent's obligation to pay the real estate taxes on the former marital home was not contained under the child-support clause of the property settlement incorporated into the judgment, but was set forth in a separate part of the agreement under the heading of real estate. While respondent's obligation to pay the real estate taxes under this provision continues until the youngest child reaches age 18, the provision is one which settles a property matter between petitioner and respondent and is not classified anywhere in the agreement as child support. Even assuming there may be an incidental benefit to the children under this clause, this is not a provision for child support and the trial court could properly award attorney fees in its discretion upon a finding of inability to pay on the part of petitioner and respondent's ability to pay.

Respondent also challenges the award of attorney fees in connection with petitioner's motion for child-support arrearages based on the provision in the original judgment that support be adjusted automatically, upward or downward, each year based on the consumer price index. While this provision clearly relates to child support, the difficulty we have is in deciding whether the motion is brought to "enforce" the provision or is more properly termed as requesting that child support be "determined" under the formula agreed to by the parties. In addition, it appears that respondent had been paying $150 per week as child support, whereas the agreement regarding child support required child support of $600 per month. Of course, paying

$150 on a weekly basis would amount to a greater sum over a year's time than paying the sum of $600 per month. Thus, as asserted by respondent in his answer and affirmative defense to petitioner's motion, he believed that the weekly payments totalled more than his monthly obligation and that he was paying his child-support obligation.

Because the formula for adjusting the child-support payments using the consumer price index is not easily applied, and because the child-support payments were paid on a weekly rather than monthly basis resulting in a larger sum, we conclude under these peculiar circumstances that petitioner's "motion" is more properly characterized as requesting a determination of support rather than enforcement of the prior judgment. Therefore, the trial court could properly award fees in its discretion based on the parties' ability to pay fees. As respondent has not challenged on appeal the court's finding of the parties' financial abilities to pay fees, but only the legal basis for it as discussed and rejected above, we find no error in the award of attorney fees.

■■■ Respondent's final contention relates to petitioner's separate motion for an increase in child support. He claims that the trial court's modification of the child-support provisions from $600 per month for three children to $150 per week for two children was excessive because there was no reliable evidence of her expenses at the time of the dissolution of marriage and at the present time and because she had the ability to earn more money to contribute to the support of the children.

■■■ The modification of child-support payments lies within the sound discretion of the trial court, and its decision will not be disturbed on appeal absent an abuse of discretion. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229.) In adjudicating a petition for modification of child support, the trial court considers the same factors it weighs under section 505(a) of the Act in the original proceeding for dissolution of the marriage. (Ill. Rev. Stat. 1985, ch. 40, par. 505(a); *In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 912, 483 N.E.2d 692.) From our examination of the record, we find no abuse of discretion in this regard.

■■■ Petitioner submitted a statement she had prepared estimating the children's portion of her household expenses at $10,890 per year based on three-fifths of the total expenses for the year. She admitted that expenses would be somewhat lower as Michael, the eldest son, was now in the air force and an adult, but stated that the other two children's expenses as teenagers had increased from what they

were at the time of the dissolution. She stated that she felt the children's expenses had doubled, and testified that the cost of winter jackets, shoes, utilities, food, and the children's activities were examples of expenses which had risen since the time of the dissolution. Jennifer still resided with her, and John, her other child, was now living in Kentucky with petitioner's mother. In 1984-85, she paid her mother $1,400 for John's expenses plus she paid for his transportation expenses on a visit to her in Illinois. She also testified that she was working as a secretary for her ex-husband earning $150 a week when the judgment of dissolution was entered. Since then, she attended beauty school and now has a beauty shop in her home where she earns approximately $200 a month, less expenses of approximately $40 a month.

Respondent is a self-employed plumbing contractor who owns his business called Dodge Plumbing and Heating. His current wife works as a bookkeeper/secretary for the business. His individual tax return from 1980, the year of the dissolution, showed an adjusted gross income of $46,953, including $30,620 of wages and $15,749 interest income. The 1980 corporation tax return for Dodge Plumbing and Heating showed gross receipts of $306,174 and taxable income of $11,996. Respondent's 1983 individual tax return indicated an adjusted gross income of $72,657. His 1984 individual tax return and W2 statements reflected wages of $38,376 for respondent, $10,800 for his wife, and a total income of $60,198 which included interest, capital gains, and rental income of respondent. Respondent testified that for 1984 he had a net income of $34,563. The 1984 corporation tax return reflected gross receipts of $451,305, but a taxable income of only $1,949.88. The return also indicated a depreciation deduction of $27,532.92.

The trial court's order actually denied petitioner's request for an increase in child support and granted respondent's counterpetition requesting a decrease in child support. In an earlier hearing, the court, when ruling on the annual automatic cost of living issue, determined that the monthly child support should be $733.98 per month, reflecting the cost of living increase over the $600 monthly support order in the original judgment. We note that there is nothing in the original judgment which would reduce this lump-sum child-support order upon any of the children reaching majority age. Thus, after the hearing on both parties' petitions to modify child support, the court actually reduced child support to $150 per week.

Respondent contends that as petitioner did not present evidence of the children's expenses at the time of the dissolution and presented

inadequate evidence of their current expenses, there was insufficient proof to justify an award of $150 per week for two children. Petitioner, however, testified that the children's expenses had doubled since the dissolution and gave several examples of expenses, such as clothing and activities, which had greatly increased. She also stated that the children's portion of her household expenses was $10,890, based on three children, and that she paid her mother $1,400 for John's expenses and paid his transportation expenses. Although only one child now resides with her, many household expenses are fixed, and the figure showing children's expenses will not be reduced by two-thirds as respondent suggests. This testimony was sufficient to enable the trial judge to determine in her discretion an adequate amount of child support based on the children's needs and the income of the parties.

■■ ■ Respondent also argues that petitioner's responsibility for the support of the children should be measured by her ability to earn, rather than what she chooses to earn. It is true that, in Illinois, financial responsibility for the support of a child is the joint obligation of both parents. (*In re Marriage of Rink* (1985), 136 Ill. App. 3d 252, 258, 483 N.E.2d 316.) While the ability of a custodial parent to work and contribute toward the support of minor children may be considered (136 Ill. App. 3d 252, 258, 483 N.E.2d 316), respondent here is working and contributing to the children's support. She has been working part-time in her home since she completed beauty school, and her only job prior to that was when she worked for respondent. The children should not suffer because the custodial parent has a limited income. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 297, 483 N.E.2d 1229.

Further, based on the guidelines for child support, respondent should be paying 25% of his net income of $34,563, or $166.17 per week for two children. Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(1).

Under the facts of this case, and considering that child support here was actually reduced from $733.98 per month to $150 per week, we find no abuse of discretion in the trial court's determination of the proper amount of child support.

Affirmed in part, reversed in part and remanded with directions.

NASH, P.J., and UNVERZAGT, J., concur.